1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GOPRO, INC.,

           Plaintiff,

    v.

360HEROS, INC.,

           Defendant.

Case No. 16-cv-01944-SI

**ORDER RE MOTIONS HEARD NOVEMBER 3, 2017, AND MISCELLANEOUS ADMINISTRATIVE MOTIONS**

Re: Dkt. Nos. 87, 88, 91, 104, 111, 112, 116, 135, 141, 147

Plaintiff GoPro, Inc. moves for summary judgment of copyright infringement by defendant 360Heros, Inc.[1] Dkt. No. 91. 360Heros opposes and moves for an order denying the summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Dkt. No. 104. The Court held a hearing on November 3, 2017. The parties then filed supplemental materials regarding the copyright claim. *See* Dkt. Nos. 132-1, 141, 147. After considering the parties' materials and arguments, the Court GRANTS the summary judgment of copyright infringement and DENIES the Rule 56(d) motion.

Plaintiff also moves to compel defendant to produce various documents. Dkt. No. 88. The Court GRANTS the motion to the extent that it seeks materials relevant to the remaining claims, consistent with the Court's ruling on the summary judgment motion. The Court DENIES the request for sanctions.

---

[1] The Court previously ruled in part on this summary judgment motion regarding standing in relation to the patent claims. *See* Dkt. No. 137.

**BACKGROUND**

1   GoPro, a Delaware corporation with its principal place of business in California, describes

2   itself as "an award-winning producer of versatile, mountable and wearable digital cameras,

3   accessories, hardware and software that help users capture immersive, engaging and professional

4   quality footage of themselves and others."  Plaintiff's Motion for Summary Judgment (Dkt. No.

5   91) at 1.  360Heros, a Delaware corporation with its principal place of business in New York,

6   "manufactures and offers for sale virtual reality and 360-degree video solutions and related

7   accessories worldwide."  Answer (Dkt. No. 24) ¶ 5.  Michael Kintner wholly owns 360Heros.

8   Def.'s Opp'n (Dkt. No. 105) at 4.

9   GoPro filed copyright registrations for four photographs.  Declaration of Erwin Cena ISO

10   MSJ ("Cena MSJ Decl.") (Dkt. No. 91-1), Exs. K-N; Declaration of James Lowe ISO Opp'n to

11   MSJ ("Lowe MSJ Decl.") (Dkt. No. 105-1), Exs. 283-286.  The first photograph is of GoPro's

12   Smart Remote, which is centered on a well-lit, white background and features a partial mirroring

13   of the Remote.  Cena MSJ Decl., Ex. N.   The second shows GoPro's HERO4 Black Camera in a

14   case from three different angles: the front with a slight angle, the side, and the back.  Cena MSJ

15   Decl., Ex. L.  The front sized view is larger than the other two views, in the forefront while the

16   other two views are further back from the photographer's camera. *See id.*  The third photograph

17   depicts GoPro's HERO4 Black camera from two views:  the camera in a case and slightly angled,

18   and another without a case and angled in the other direction.  Cena Decl., Ex. M.  The fourth also

19   depicts GoPro's HERO4 Black camera from two views:  the camera in a case facing front with a

20   red ribbon and bow across the bottom, and another view of the camera without a case or bow and

21   facing front but slightly angled.  Cena Decl., Ex. K.  All of the images featuring the HERO

22   cameras show the camera as "on," and are on well-lit, white backgrounds with partial mirroring of

23   each view shown.

24   To produce these images, GoPro hired contractors and rented studio space for the photo

25   shoot.  Justin Wilkenfeld Deposition Transcript ("Wilkenfeld Tr.") (Dkt. No. 147-2) at 109:3-12,

26   182:2-4.  Carter Dow took the photos at issue and Lee Dralle retouched the photos.  Lowe MSJ

27   Decl., Exs. 281, 282; Wilkenfeld Tr. at 109:15-16, 113:8.  During the photo shoot, "there was

1    direction coming from [GoPro's] . . . head of the creative department to the art director or creative

2    director, who then passed that along to the actual photographer." Wilkenfeld Tr. at 182:10-15.

3    This was "creative direction in terms of the overall aesthetic look to the photographs that [GoPro]

4    . . . wanted for marketing purposes," including what camera angles to shoot and selecting multiple

5    mediums or backgrounds. *Id.* at 182:17 – 183:1. For instance, at the shoot, the GoPro products

6    were photographed on black and white Plexiglass surfaces "to see what the differences were in

7    contrast[.]" *Id.* at 135:3-12. The lighting and angles were also important to "avoid getting weird

8    reflections or other things that can actually make that image not quite as crisp or clear or as good

9    as [GoPro] would want it to be," especially because some of the images featured waterproof

10   housing that was reflective. *Id.* at 191:1-10.

11       Dow took many photos, including "every 15 degrees of the product." *Id.* at 192:1-17.

12   GoPro then reviewed a "big pool of images," and "narrow[ed] it down to a limited set of images

13   that the team continue[d] to work on." *Id.* at 192:18-23. Notes from the review meeting were then

14   shared with the photo editor for the retouch work. *Id.* at 113:22-25. Dralle made digital additions

15   to the photographs, including adding the information on the front screen of the camera, the holiday

16   bow, coloring and shading (including black shading on the camera lens), "[h]ow clearly and

17   prominently or crisp the logos look," and ensuring that the LED lights are lit the right way to show

18   the camera is recording. *Id.* at 193:10-25. Dralle "would have been charged with taking direction

19   from the [GoPro] art director and/or head of marketing ultimately to make sure that that final

20   product met all of that direction." *Id.* at 194:3-5.

21       After the photos were retouched, there was a "back and forth process with the . . . photo

22   editor" where "additional feedback can happen." *Id.* at 114:18 – 115:1. GoPro "take[s] a lot of

23   time and really pay[s] very close attention to the minute details on those final images . . . [A]

24   seemingly simple image takes quite a lot of work to actually get to that final product that [GoPro

25   will] publish." *Id.* at 115:2-6. The "aesthetic," or "overall look and feel," of the photographs

26   reflects "stylistic choices" by GoPro's creative team, including having "clean lines, clean look,

27   crisp images, . . . [a] white reflective background, . . . [and] how the logo looks." *Id.* at 189:7-16.

28

3

1    GoPro asserts that 360Heros infringed its copyrights by copying those four photographs

2    and publishing them on 360Heros' website. *See* Cena MSJ Decl., Ex. P (Smart Remote), Ex. Q

3    (HERO4 Black Three Camera View), Ex. R (HERO4 Black Two Camera View), Ex. S (HERO4

4    Black Two Camera View with Bow). 360Heros is not an authorized reseller or distributor of

5    GoPro's products. Cena MSJ Decl., Ex. A at 134:2-8. Nor did 360Heros ask GoPro for

6    permission to use GoPro's images. *Id.* at 134:23 – 135:7.

7    Instead, 360Heros obtained the images from GoPro's authorized resellers or other

8    websites. *Id.* 135:10-17; 137:13 – 138:23; *see also* Declaration of Jim Weiser (Dkt. No. 132-1).

9    For instance, Jim Weiser of RU4Scuba LLC declares that, as a member of the GoPro Authorized

10   Reseller Program ("GARP"), RU4Scuba received marketing materials, including the four disputed

11   images, from GoPro. Weiser Decl. ¶¶ 1-3. RU4Scuba sold GoPro cameras and related

12   accessories to 360Heros and, in the latter half of 2014, provided GoPro's images to 360Heros for

13   use on the 360Heros website. *Id.* ¶ 4. The GoPro cameras and accessories that RU4Scuba sold to

14   360Heros "were then sold by 360Heros on its 360Heros online website shop which also displayed

15   the GoPro product images that RU4Scuba had supplied[.]" *Id.* ¶ 5. Weiser declares that he

16   understood RU4Scuba's "business relationship with 360Heros was fully approved by GoPro," and

17   states that RU4Scuba established its relationship with 360Heros with the approval of Shane

18   Meyers of Sportech Sales Group, which is a GoPro authorized distributor. *Id.* ¶ 6. However,

19   GoPro's Authorized Reseller Agreement prohibits its resellers from assigning, subcontracting, or

20   delegating their rights and obligations under the agreement without GoPro's prior written consent.

21   Cena MSJ Decl., Ex. O, § 9. The Reseller Agreement further states that any attempt to do so

22   would be void. *Id.* There is no evidence of any written consent by GoPro to 360Heros' use of the

23   four images.

24

25                                        **LEGAL STANDARD**

26   Summary judgment is proper if the pleadings, the discovery and disclosure materials on

27   file, and any affidavits show that there is no genuine dispute as to any material fact and that the

28   movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party

4

1    bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

2    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to

3    disprove matters on which the non-moving party will have the burden of proof at trial. The

4    moving party need only demonstrate to the Court that there is an absence of evidence to support

5    the non-moving party's case. *Id.* at 325.

6    Once the moving party has met its burden, the burden shifts to the non-moving party to

7    "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then

8    Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply

9    show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,*

10   *Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of

11   evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find

12   for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

13   In deciding a summary judgment motion, the Court must view the evidence in the light

14   most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

15   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

16   inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

17   summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and

18   moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.

19   *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The

20   evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

21   Rule 56(d) allows a court to defer or deny consideration of a motion, or allow time to

22   obtain discovery, if a nonmovant shows "by affidavit or declaration that, for specified reasons, it

23   cannot present facts essential to justify its opposition." A party requesting a continuance or denial

24   must "identify by affidavit the specific facts that further discovery would reveal, and explain why

25   those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441

26   F.3d 1090, 1100 (9th Cir. 2006).

27

28

5

United States District Court
Northern District of California

**DISCUSSION**

**I.  Motion for Summary Judgment**

GoPro seeks summary judgment on its claim for copyright infringement of four images — one depicting its Smart Remote and three depicting its HERO cameras.  Pl.'s Mot. at 4.  "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  360Heros does not dispute that it had access to the images or that it copied the images.  Rather, it presents two challenges to the validity of GoPro's copyrights: (i) whether the copyright to the images was validly assigned to GoPro; and (ii) whether the images are copyrightable.  It also presents defenses to copying, including a license defense and the doctrines of merger and *scenes a faire*.  Lastly, 360Heros argues that further discovery is needed before the Court can resolve this claim.

**A.  Copyright Ownership**

"Section 501(b) of the Copyright Act of 1976 establishes who has standing to sue for infringement: 'The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.'"  *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 982-83 (9th Cir. 2017) (citing 17 U.S.C. § 501(b)).  A copyright in a protected work "vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  "The authors of a joint work are co-owners of copyright in the work."  *Id.*  "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."  17 U.S.C. § 201(b).  However, copyright ownership may be transferred.  17 U.S.C. § 201(d).  "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  "[A]n assignment

6

1    (which transfers legal title to the transferee) . . . qualifies as a 'transfer' of a right in a copyright for

2    the purposes of the Act." *Minden Pictures v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th

3    Cir. 2015) (internal emphasis removed).

4    Here, photographer Dow signed and dated a document to assign his rights in the images to

5    GoPro on April 4, 2016. Lowe MSJ Decl., Ex. 281. However, in the first line of this assignment

6    document, the "Effective Date" of the assignment was left blank. *Id.* On April 5, 2016, retoucher

7    Dralle also executed an assignment document of the retouched images listing an effective date of

8    April 5, 2016. *Id.*, Ex. 282. GoPro then filed copyright registrations with the U.S. Copyright

9    Office to register the four sets of images. These registrations listed Dow and Dralle as co-authors

10   who did not make the work for hire but who had already assigned their copyrights to GoPro.

11   Lowe MSJ Decl., Exs. 283, 284, 285, 286. 360Heros notes that because the images were not

12   works for hire, GoPro may only assert this copyright claim if Dow and Dralle validly transferred

13   their ownership of the relevant copyrights to GoPro. Def.'s MSJ Opp'n at 13.

14

15                  **1.     Assignment by Dow**

16   360Heros argues that there is at least a genuine issue of fact regarding whether GoPro is a

17   valid assignee of Dow's copyright. It argues that the "Effective Date" is a material term in the

18   contract, and the failure to fill in that date renders the assignment unenforceable. Def.'s MSJ

19   Opp'n at 14. In 360Heros' view, GoPro did not intend the date of the signature to be the effective

20   date because "as a sophisticated party, it would have noted that the two are meant to be the same

21   or eliminated the Effective Date term entirely as superfluous." *Id.*

22   Under California law, "[a] contract must be so interpreted as to give effect to the mutual

23   intention of the parties as existed at the time of contracting, so far as the same is ascertainable and

24   lawful." Cal. Civ. Code § 1636. "[I]ntent is to be inferred, if possible, solely from the written

25   provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).

26   Additionally, "a written agreement is 'executed' when all parties sign the agreement; only then is

27   the written agreement completed and all necessary formalities performed." *Nielsen Constr. Co. v.*

28   *Int'l Iron Prod.*, 18 Cal. App. 4th 863, 869 (1993). "California law also recognizes that contract

7

1    interpretation is a question of law for the court that should only be left to a jury if 'the

2    interpretation turns upon the credibility of extrinsic evidence.'" *Oracle Am., Inc. v. Terix*

3    *Computer Co., Inc.*, No. 5:13-cv-03385-PSG, 2015 WL 2090191, at \*4 (N.D. Cal. May 5, 2015)

4    (quoting *Parson v. Brand Dev. Co.*, 62 Cal.2d 861, 865 (1965)).

5          As GoPro notes, at least one California court has addressed the issue of whether the

6    absence of an effective date renders a contract unenforceable. *See Cycle Shack, Inc v. Harley-*

7    *Davidson Motor Co., Inc.*, No. G048736, 2014 WL 6810081 (Cal. Ct. App. Dec. 3, 2014)

8    (unpublished).[2]  In *Cycle Shack*, the plaintiff appealed an order compelling arbitration, arguing

9    that the contract containing the arbitration clause never became operable because the contract

10   listed the signature date, but the effective date was left blank. *Id.* at \*1-2.  The California Court of

11   Appeal rejected this argument, stating that the fact that the effective date was not filled in did not

12   mean there was no contract. *Id.* at \*4.  Rather, the Court held, "[w]hen the parties have entered

13   into an agreement and evidenced their intent to be bound by the agreement, the contract is

14   enforceable notwithstanding an omission in one of the terms of the agreement." *Id.* (citing *Patel v.*

15   *Liebermensch*, 45 Cal.4th 344, 352 (2008)).

16         The Court agrees with the reasoning of *Cycle Shack*.  The assignment form between GoPro

17   and Dow contained all material terms, was signed by both parties, and the signatures were dated.

18   Therefore, the assignment is enforceable and GoPro is the owner of the copyrights being asserted

19   in this case. *Cf.* Cal. Civ. Code § 1657 ("If no time is specified for the performance of an act

20   required to be performed, a reasonable time is allowed.  If the act is in its nature capable of being

21   done instantly . . . it must be performed immediately upon the thing to be done being exactly

22   ascertained.").

23         360Heros' cited case to support its contrary argument is inapposite. *See Ins. Co. of State of*

24   *Pennsylvania v. Don Siegel Constr., Inc.*, 2006 WL 1667175 (N.J. Super. Ct. June 19, 2006).

25

26         [2] Although unpublished, the Court may still examine the *Cycle Shack* decision as relevant
27   authority. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th
     Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no
28   precedential value.").

8

1    First, the case applies New Jersey contract law, which does not control here.  Second, the court

2    found the contract unenforceable because "[a]ll the provisions and circumstances remained

3    uncertain and were never ultimately finalized."  *Id.* at \*3.  In particular, the court stated, "there are

4    instances in which an incomplete written recitation of a contract's terms may nevertheless provide

5    a basis for performance."  *Id.*  But the court noted that the particular contract at issue left blank

6    "the effective date of the contract, the start date for the work, the end date for the work, and the

7    completion date from which liquidated damages would be determined."  *Id.* at \*1.  And "all of the

8    material terms were tied together, each being a linchpin to the entire understanding of all the

9    parties."  *Id.* at \*3.  In contrast, the assignment contract here does not lack such an extensive

10   number of material terms to prevent a finding of mutual assent to the assignment.

11

12                          **2.      Assignment by Dralle**

13         360Heros next challenges Dralle's involvement, asserting that the purported assignment

14   contracts show that the disputed images "were created as part of separate contracts between Dow

15   and GoPro and then between Dralle and GoPro."  Def.'s MSJ Opp'n at 14.  It seemingly argues

16   that Dralle is, therefore, at most an author of a "derivative work,"[3] rather than a co-owner of a

17   joint work. Def.'s MSJ Opp'n at 14-15.  360Heros, however, fails to explain the significance of

18   such a finding.  As GoPro points out, even if the listing of the images as a joint work on the

19   copyright registrations was an error, "[t]he case law is overwhelming that inadvertent mistakes on

20   registration certificates do not invalidate a copyright and thus do not bar infringement actions,

21   unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to

22   defraud the Copyright Office by making the misstatement."  *Urantia Found. v. Maaherra*, 114

23   F.3d 955, 963 (9th Cir. 1997) (collecting cases).  There is no evidence of either exception here,

24   and 360Heros has not argued that it may find such evidence if further discovery is permitted.

25

26

27         [3] "The Copyright Act defines a 'derivative work' as 'a work based upon one or more
     preexisting works.'"  *Ets-Hokin I*, 255 F.3d at 1077.  "Under section 106, the 'owner of copyright'
28   has 'exclusive rights' to 'prepare derivative works based upon the copyrighted work.'"  *Id.* at
     1078.

### B. Copyrightability

"Copyright protection is available for 'original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.'" *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (citing 17 U.S.C. § 102(a)). "Any copyrighted expression must be 'original.'" *Id.* (citing *Feist*, 499 U.S. at 345); *see also Ets-Hokin v. Skyy Spirits, Inc.* ("*Ets-Hokin I*"), 225 F.3d 1068, 1073 (9th Cir. 2000) ("The essence of copyrightability is originality of artistic, creative expression."). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345.

There is a "low threshold for originality under the Copyright Act" *Ets-Hokin*, 225 F.3d at 1073. The Supreme Court has described the requisite creativity as "extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist*, 499 U.S. at 345. There is also a "longstanding and consistent body of case law holding that photographs generally satisfy this minimal standard." *Ets-Hokin I*, 225 F.3d at 1073; *see also Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) ("Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." (citing 17 U.S.C. § 102(a)(5)). Decisions about "lighting, shading, angle, background and so forth have been recognized as sufficient to convey copyright protection . . . ." *Ets-Hokin I*, 225 F.3d at 1075. "[E]ven the slightest artistic touch will meet the originality test for a photograph." *Id.* at 1076.

GoPro has certificates of registration from the U.S. Copyright Office for each of the four photographs, which were first published in 2014. *See* Cena MSJ Decl., Exs. G-J. These certificates establish a "rebuttable presumption of originality." *Ets-Hokin I*, 225 F.3d at 1075; 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> A certificate of copyright registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights. An accused infringer can rebut this presumption of validity, however. To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (internal quotation marks and citations omitted). In other words, to rebut the presumption of validity, 360Heros "must demonstrate why the photographs are not copyrightable." *Ets-Hokin I*, 225 F.3d at 1076.

360Heros argues that these photographs lack originality and, therefore, are not copyrightable. It contends that the photos' arrangements—centered, using the rule of thirds, and portraying both the front and back of an object—is not original. It also asserts that the use of a white background, a partial mirrored reflection, and retouching are not original because they are commonly used in photography. Additionally, it argues that showing a product "on" is a functional, not aesthetic, choice. Lastly, it claims that the use of a bow on products is a common technique to suggest a holiday gift.[4]

But the Ninth Circuit has found evidence of originality in similar circumstances. For instance, *Ets-Hokin I* examined photos of a vodka bottle. The court noted that "although [plaintiff] took photos that undoubtedly resemble many other product shots of the bottle -- straight-on, centered, with backing so the word 'Skyy' on the bottle is clear -- the potential for such similarity does not strip his work of the modicum of originality necessary for copyrightability. Indeed, the fact that two original photographs of the same object may appear similar does not eviscerate their originality or negate their copyrightability." *Id.* at 1077. The court stated that given the plaintiff photographer's decisions about "lighting, shading, angle, background, and so forth," it had "no difficulty concluding" that the product shots were sufficiently original to merit copyright protection and that the defendants had not met their burden of showing copyright invalidity. *Id.*

---

[4] 360Heros also argues that because the Smart Remote and HERO cameras are useful and utilitarian objects, the products themselves are not copyrightable. Def.'s MSJ Opp'n at 16 (citing *Ets-Hokin I*, 225 F.3d at 1080 ("[T]he design of a useful article . . . is not protected unless the design includes features that exist separately from utilitarian ones.")). However, this does not mean that the *photographs* of these objects lack originality.

1   360Heros attempts to distinguish this case from *Ets-Hokin I*, where the court cited a

2   copyright treatise stating that a "photograph may claim the necessary originality to support a

3   copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of

4   photograph, lighting, and determination of the precise time when the photograph is to be taken."

5   225 F.3d at 1076. 360Heros reads this to mean that when "determining originality for images, it is

6   the photographer's creative choices that is considered." Def.'s Supplemental Filing (Dkt. No.

7   147-4) at 2. It argues that here, the creative decisions were made by GoPro, rather than the

8   photographer. *Id.* at 5. Because the photographer did not make any creative choices, 360Heros

9   contends that the photos lack the necessary originality to be copyrightable. *Id.*

10   The Court declines to read *Ets-Hokin I* so narrowly. 360Heros has not provided any

11   reason why the creative choices underlying copyrighted works are any less creative or original

12   simply because they came at the direction of a managing producer and were implemented by the

13   photographer, rather than originating from the photographer alone. The Court further finds that

14   the photographs here possess sufficient levels of originality. In particular, as GoPro lists, "the

15   photos reflect a spectrum of creative choices, including . . . the positioning and angle of the

16   products, shadowing, lens glare, addition of ribbon/bow around the Hero® camera, and crisply-lit

17   product facades that contrast against the photos' backgrounds." Pl.'s MSJ Reply at 5. Thus, the

18   photographs are copyrightable.

19

20   **C.    Copying of the Copyrighted Works**

21   "A plaintiff must show 'copying' of a protected work to prove copyright infringement."

22   *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). "If there is no direct

23   evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1)

24   the defendant had access to the copyrighted work prior to the creation of defendant's work and (2)

25   there is substantial similarity of the general ideas and expression between the copyrighted work

26   and the defendant's work." *Id.* at 984-85. When evaluating whether works are "substantially

27   similar," courts apply a two-part analysis: the extrinsic test and the intrinsic test. *Id.* at 985. "The

28   extrinsic test requires plaintiffs to show overlap of 'concrete elements based on objective criteria,'

12

United States District Court
Northern District of California

1    while the intrinsic test is subjective and asks 'whether the ordinary, reasonable person would find

2    'the total concept and feel of the works' to be substantially similar.'" *Id.* (internal citations

3    omitted). However, "a district court may grant summary judgment for plaintiffs on the issue of

4    copying when the works are so overwhelmingly similar that the possibility of independent creation

5    is precluded." *Id.* at 987. "Where the extrinsic similarity is so strong that the works are near

6    duplicates save for superficial differences, the court may properly conclude that no reasonable jury

7    could find that the works are not substantially similar in their overall concept and feel." *Id.* "In

8    such a case, the court need not delve into a complex subjective analysis of the works to assess the

9    substantial similarity and does not risk supplanting the jury's subjective interpretation with its

10   own." *Id.*

11       That is the case here. 360Heros had access to GoPro's copyrighted images through

12   GoPro's website and authorized distributors. Cena MSJ Decl., Ex. A at 135:10-17; 137:13 –

13   138:23; *see also* Weiser Decl. Additionally, GoPro has produced copies of its images, copies of

14   the images as they appeared on 360Heros' website, and a side-by-side comparison those images.

15   The images appear identical or, at the very least, "so overwhelmingly similar" to justify granting

16   summary judgment for GoPro on the issue of copying. 360Heros has not put forth any contrary

17   evidence or argued that it did not have access to or copy the images. *See* Hearing Transcript (Dkt.

18   No. 140) at 4:7-16 (360Heros agreeing that the images were copied).

19       However, 360Heros also invokes the doctrines of merger and *scenes a faire*, which are

20   defenses to infringement. *Ets-Hokin I*, 225 F.3d at 1082. "Under the merger doctrine, courts will

21   not protect a copyrighted work from infringement if the idea underlying the copyrighted work can

22   be expressed in only one way, lest there be a monopoly on the underlying idea." *Id.* "In such an

23   instance, it is said that the work's idea and expression 'merge.'" *Id.* "Under the related doctrine

24   of scènes à faire, courts will not protect a copyrighted work from infringement if the expression

25   embodied in the work necessarily flows from a commonplace idea; like merger, the rationale is

26   that there should be no monopoly on the underlying unprotectable idea." *Id.* (internal footnote

27   omitted). *Id.*

28

13

1       360Heros argues that the images of the Smart Remote and HERO cameras are unprotected

2 under these doctrines because the potentially protectable elements, such as the lighting and angle,

3 flow necessarily from the photos' realistic depictions of the cameras. It asserts that finding these

4 images protectable would secure GoPro "the exclusive right of use in such photographs, which

5 effectively would permit them to monopolize the market for selling their cameras only to them and

6 their chosen resellers." Def.'s MSJ Opp'n at 19.

7       But 360Heros has not established that there are no copyrightable contributions to the

8 photographs. As the Ninth Circuit stated in discussing a case involving glass-in-glass depictions

9 of jellyfish, a copyright owner "may prevent others from copying the original features he

10 contributed, but he may not prevent others from copying elements of expression that nature

11 displays for all observers, or that the glass-in-glass medium suggests to all sculptors." *Satava*, 323

12 F.3d at 812. After subtracting unoriginal elements, a party may be left with a "thin copyright that

13 protects against only virtual identical copying." *Id.*; *see also Ets-Hokin v. Skyy Spirits, Inc.* ("*Ets-*

14 *Hokin II*"), 323 F.3d 763 (9th Cir. 2003). Although GoPro has a thin copyright, there is evidence

15 of "virtually identical copying" by 360Heros. Therefore, the doctrines of *scenes a faire* and

16 merger do not shield 360Heros from liability here. *See Ets-Hokin II*, 323 F.3d at 764 (holding that

17 doctrines of merger and *scenes a faire* applied where the allegedly infringing photographs were

18 not "virtually identical").

19       Additionally, during the hearing and in a supplemental filing, 360Heros argued that there

20 was an issue of fact regarding whether it received permission to use the images through one of

21 GoPro's authorized resellers. *See* Weiser Decl.; Hearing Tr. at 9:24 – 10:16. The Court construes

22 this argument as a license defense to the copying. "A defendant asserting a license defense has the

23 initial burden of identifying any license provision that puts it in the clear." *Oracle*, 2015 WL

24 2090191, at \*1. Because 360Heros has not identified any written agreement, the Court considers

25 its argument to be an implied license defense.

26       "Though exclusive licenses must be in writing, 17 U.S.C. § 204, grants of nonexclusive

27 licenses need not be in writing, and may be granted orally or by implication." *Asset Mktg. Sys.,*

28 *Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008). "[A]n implied license is granted when (1) a

United States District Court
Northern District of California

1    person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that

2    particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the

3    licensee-requestor copy and distribute his work." *Id.* at 754-55 (internal quotation marks and

4    footnote omitted). "But '[a]s a general matter, implied terms should never be read to vary express

5    terms,' and no implied license may permit what the actual licenses prohibit." *Oracle*, 2015 WL

6    2090191, at *8.

7         Here, Jim Weiser of RU4Scuba, a GARP member, declares that RU4Scuba provided

8    GoPro's images to 360Heros via a USB stick for use on the 360Heros website in late 2014. *Id.* ¶

9    4. Weiser declares that he understood RU4Scuba's "business relationship with 360Heros was

10   fully approved by GoPro," and that RU4Scuba established its relationship with 360Heros with the

11   approval of Sportech Sales Group, a GoPro authorized distributor. *Id.* ¶ 6. However, GoPro's

12   Authorized Reseller Agreement provides that the reseller "may not assign any rights or

13   subcontract or delegate any obligations" under the Agreement "without GoPro's prior written

14   consent, and any attempt to do so will be void." Cena Decl., Ex. O at § 9; *see also* Hearing Tr. at

15   12:7-10.

16        There is no evidence that 360Heros requested the images from GoPro, that GoPro

17   delivered the images to 360Heros, or that GoPro intended 360Heros to copy and use GoPro's

18   images. Although 360Heros received GoPro's images through an authorized reseller, there is no

19   evidence that GoPro ever consented. Pursuant to the Authorized Reseller Agreement, any

20   permission or approval from RU4Scuba or Sportech Sales Group was void. Accordingly,

21   360Heros' license defense fails as a matter of law.[5]

22

23

24

25

26

27        [5] GoPro argues that 360Heros' license defense should be rejected because the Weiser
     declaration was improperly filed after the hearing and 360Heros did not include a license defense
28   in its pleadings. *See* Dkt. No. 141. However, as noted above, the Court finds that even if not
     waived, the defense fails on the merits.

15

**D.     360Heros' Rule 56(d) Motion[6]**

360Heros also argues that additional discovery is needed to defend against the copyright infringement claim. Def.'s Rule 56(d) Mot. (Dkt. No. 104) at 8. In particular, it asserts that it needs more information to assess what creative choices the photographer and editor made, and whether the copyrights were validly assigned to GoPro. *Id.*; *see also* Def.'s Reply (Dkt. No. 120) at 5-6. In light of the supplemental filing of the Wilkenfeld deposition transcript, the request for additional discovery regarding creativity and originality of the photographs is moot. Additionally, there is no need for additional discovery regarding the copyright assignments because the Court has received copies of the copyright registrations for each of the images and the valid assignment contracts from Dow and Dralle.

Consequently, the Court GRANTS summary judgment of copyright infringement by 360Heros and DENIES 360Heros' Rule 56(d) motion for additional discovery on this issue.

**II.     Motion to Compel**

On July 27, 2017, in response to a joint discovery dispute letter, the Court ordered 360Heros to produce within ten days "all non-privileged, responsive documents in its possession" with respect to GoPro's First Set of Requests for Production ("RFP") (RFP Nos. 7, 9, 27, 28, 37, 38, 42, 70, 71, 72, 82, and 83). Dkt. No. 80. The Court stated that "[i]f GoPro remains unsatisfied, it may bring a motion to compel with specific details as to why 360Heros' productions remain incomplete," and that "[i]f a motion to compel becomes necessary, the Court may consider shifting fees." *Id.* GoPro now moves to compel production in response to those same RFPs. Dkt. No. 88. It groups its RFPs into four categories: (1) third party materials about testing and prototyping of 360Heros' products (RFP Nos. 7, 9, 27, 37, 82, and 83); (2) third party materials relating to manufacturing, distribution, and marketing of 360Heros' Products (RFP Nos. 9, 27, 70, 71, 72, 82, and 83); (3) third party materials relating to permission to use GoPro Copyrighted

---

[6] GoPro asks the Court to deny 360Heros' Rule 56(d) motion for failure to notice the motion at least 35 days before the hearing. The Court declines to deny the motion for this reason, but the parties a reminded to notice all future motions in accordance with the local rules.

1  Images (RFP Nos. 27, 70-72); and (4) third party materials obtained at conferences and trade

2  shows (RFP Nos. 7, 9, 28, 70-72). It also requests a second deposition of Kintner, and its fees and

3  costs associated with bringing this motion. 360Heros opposes and requests its fees and costs.

4         The parties' primary disagreement is whether the Court's prior order required 360Heros to

5  produce electronically-stored information ("ESI"), including emails, in light of the Court's ESI

6  Order (Dkt. No. 78). Because of this confusion, the Court now clarifies that it intended all

7  responsive materials—including ESI and emails—to be produced. Given the Court's rulings on

8  GoPro's summary judgment motion and its previous order regarding the requested discovery, the

9  Court GRANTS in part GoPro's motion to compel. 360Heros shall produce all responsive, non-

10 privileged materials—including ESI and emails—to the extent the requests are relevant to the

11 remaining claims in this suit **within ten days of this order**. If 360Heros needs search terms or

12 other assistance in defining its search for responsive ESI materials, the parties shall meet and

13 confer to ensure that the responsive materials are located efficiently. The Court also grants the

14 request to take another deposition of Kintner after the responsive materials have been produced.

15 This deposition is limited to three hours and discussion only of newly produced materials. The

16 parties shall bear their own costs associated with this deposition.

17        In light of the seeming confusion over the scope of the Court's prior order, the Court

18 DENIES GoPro's and 360Heros requests for an award of fees and costs in relation to this motion.

19 *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). In the future, if the parties have any disputes regarding

20 the meaning of the Court's orders, they should seek prompt clarification from the Court.

21        Additionally, the Court DENIES GoPro's administrative motion to supplement the record

22 regarding the motion to compel. *See* Dkt. No. 112. The Court finds the supplemental information

23 unnecessary to its decision.

24

25 **III.    Administrative Motions to Seal**

26        With the exception of a narrow range of documents that are "traditionally kept secret,"

27 courts begin their sealing analysis with "a strong presumption in favor of access." *Foltz v. State*

28 *Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). When applying to file documents

17

1     under seal in connection with a dispositive motion, or a motion "more than tangentially related to

2     the merits of a case," *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir.

3     2016), the submitting party bears the burden of "articulating compelling reasons supported by

4     specific factual findings that outweigh the general history of access and the public policies

5     favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*

6     *v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal citations and

7     quotation marks omitted). Generally, however, when a party seeks to seal documents attached to a

8     non-dispositive motion only tangentially related to the merits of a case, a showing of "good cause"

9     under Federal Rule of Civil Procedure 26(c) is sufficient. *Id.* at 1179-80; *Ctr. for Auto Safety*, 809

10     F.3d at 1099; Fed. R. Civ. P. 26(c).

11        In light of the compelling reasons provided by the parties and the Court's independent

12     review of the documents, the following administrative motions are GRANTED: docket numbers

13     87, 111, and 116. The Court DENIES the administrative motion to seal the Weiser declaration.

14     *See* Dkt. No. 135.[7] The Weiser declaration was previously filed publicly, and discussed in a

15     publicly filed case management statement and the Court's previous summary judgment order,

16     which is now unsealed. *See* Dkt. Nos. 132, 137. Likewise, the administrative motion to seal

17     GoPro's response to the Weiser declaration is DENIED. *See* Dkt. No. 141.

18        With respect to the administrative motion to seal the Wilkenfeld transcript and briefings

19     discussing this transcript, 360Heros seeks to seal information solely because GoPro has designated

20     that information confidential under the parties' protective order. *See* Dkt. No. 147. Pursuant to

21     Civil Local Rule 79-5(e), if a submitting party seeks "to file under seal a document designated as

22     confidential by the opposing party . . . or a document containing information so designated by an

23     opposing party," "[w]ithin 4 days of the filing of the Administrative Motion to File Under Seal,

24     the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing

25     that all of the designated material is sealable." N.D. Cal. L.R. 79-5(e). GoPro has not done so

26     with respect to docket number 147. **If GoPro wishes to have the Wilkenfeld transcript sealed,**

27

28         [7] The Court does not rule at this time on the other exhibits discussed in this administrative
motion to seal.

**it must submit a declaration under Civil L.R. 79-5(d)(1)(A) within 7 days of the date of this order.**

## CONCLUSION

The Court GRANTS GoPro's motion for summary judgment of copyright infringement by 360Heros. The Court GRANTS in part GoPro's motion to compel to the extent it seeks materials relevant to the remaining claims and another deposition of Michael Kintner, but DENIES the request for sanctions.

**IT IS SO ORDERED**.

Dated: November 28, 2017

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California