KILPATRICK TOWNSEND & STOCKTON LLP
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
RYAN BRICKER (State Bar No. 269100)
BYRON R. CHIN (State Bar No. 259846)
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email: mboroumand@kilpatricktownsend.com
        rbricker@kilpatricktownsend.com
        bchin@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
MEGAN M. CHUNG (State Bar No. 232044)
ERWIN L. CENA (State Bar No. 272960)
12730 High Bluff Drive, Suite 400
San Diego, California 92130
Telephone:  (858) 350-6100
Facsimile:  (858) 350-6111
Email:  mchung@kilpatricktownsend.com
        ecena@kilpatricktownsend.com

Attorneys for Plaintiff
GOPRO, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPRO, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>360HEROS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:16-cv-1944 (SI)<br><br>**PLAINTIFF GOPRO, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL TERMINATING SANCTIONS**<br><br>Date:        March 23, 2018<br>Time:        9:00 a.m.<br>Ctrm.:       1, 17th Floor<br>             Hon. Susan Illston |

**REDACTED**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 23, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard before Judge Susan Illston at 450 Golden Gate Avenue, Courtroom 1, 17th Floor, San Francisco, CA 94102, Plaintiff GoPro, Inc. ("GoPro") will, and hereby does, move this Court for terminating and other sanctions against Defendant 360Heros, Inc. ("360Heros").  GoPro brings this Motion on the basis of grave litigation misconduct by 360Heros and its principal Michael Kintner, including their manufacturing of and continued reliance upon forged evidence, perjury and suborning of perjury, and obstruction of justice, including a meritless assertion of privilege in attempts to hide falsified documents.  This misconduct violates the law, but has also needlessly increased expenses, wasted judicial resources, and undermined the orderly, just and speedy resolution of this action.

In order to protect the integrity of the judicial process, GoPro specifically seeks an Order:

(1) granting terminating sanctions and/or default against 360Heros with respect to GoPro's ABYSS trademark claims, including by striking 360Heros' pleadings, terminating its defenses, entering defaults and granting default judgment against 360Heros on GoPro's claims relating to the ABYSS mark;

(2) in the alternative of terminating sanctions, entering instructional and evidentiary sanctions that (a) establish that GoPro has priority of use of the ABYSS mark, which is senior to "Abyss" used by 360Heros, and (b) instruct the jury that 360Heros and Mr. Kintner willfully falsified and submitted forged documents and offered false testimony in this case and that the jury may consider these facts in drawing inferences at trial and assessing credibility; and

(3) granting such other relief that the Court may see fit to grant.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Byron R. Chin ("Chin Decl."), and the [Proposed] Order Granting Partial Terminating Sanctions, filed concurrently herewith, the pleadings on file in this matter, and upon all such further argument as may be presented at the hearing on this matter and which the Court deems appropriate.

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED .................................................... 2

III.   STATEMENT OF FACTS ....................................................................................... 3

     A.     Priority of the ABYSS Mark is a Critical Issue to the Trademark Claims ......................................................................................................... 3

     B.     360Heros' Forged Evidence of First Use of "Abyss" ............................. 4

     C.     360Heros Claims Authenticity and Veracity of the Forged Document ............ 5

     D.     GoPro Obtained Forensic Confirmation of the Falsity of the Forged Document and Notified 360Heros .......................................................... 6

     E.     GoPro Promptly Notified 360Heros of the Forged Document ...................... 10

     F.     360Heros' Baseless Assertion of Privilege Over the Forged Document ........ 11

IV.   ARGUMENT .......................................................................................................... 13

     A.     Legal Standard .......................................................................................... 13

     B.     360Heros' Bad Faith Conduct ................................................................. 18

     C.     The Public Interest in Expeditious Resolution of Litigation and the Court's Need to Manage its Docket ........................................................ 19

     D.     The Risk of Prejudice to GoPro ................................................................ 20

     E.     Public Policy .............................................................................................. 21

     F.     Availability of Less Drastic Sanctions ..................................................... 21

     G.     In the Alternative, the Court Should Impose Evidentiary and Instructional Sanctions ............................................................................. 22

         1.     Evidentiary Sanctions ................................................................... 22

         2.     Adverse Inference Jury Instruction .............................................. 23

V.     CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
  No. CV 12-6972 FMO, 2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) ................................ *passim*

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1993) ......................................................................................13, 17

*Apple Inc. v. Samsung Elecs. Co.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...........................................................................23

*Arnold v. City of El Dorado*,
  No. 2:10-CV-3119 KJM GGH, 2012 WL 3276979 (E.D. Cal. Aug. 9, 2012) ....................... *passim*

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................................................13

*Combs v. Rockwell Int'l Corp.*,
  927 F.2d 486 (9th Cir. 1991) ..............................................................................14, 15, 18

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) .........................................................................................17

*Da-Silva v. Smith's Food & Drug Centers, Inc.*,
  No. 2:12-CV-00595-GMN-VCF, 2013 WL 2558302 (D. Nev. June 8, 2013) ...................13, 16, 18

*Gonzalez v. Texaco, Inc.*
  No. C 06-02820 WHA, 2007 WL 2255217, at *1-2 (N.D. Cal. Aug. 3, 2007) .............................17

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S.Ct. 1178 (2017) ....................................................................................................13

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993) ...........................................................................................17

*Indiezone, Inc. v. Rooke*,
  No. 13-CV-04280-VC, 2014 WL 4354122 (N.D. Cal. Sept. 2, 2014), *aff'd*, No. 14-
  16895, 2017 WL 6379129 (9th Cir. Dec. 14, 2017) ................................................... *passim*

*IV Solutions, Inc. v. Office Depot Emp. Welfare Benefit Plan*
  No. EDCV 07-1603-VAP (JWJx), 2009 WL 10314274, at *6 (C.D. Cal. May 13,
  2009) ...........................................................................................................................17

*Keithley v. Home Store.com, Inc.*,
  No. C-03-04447 SI (EDL), 2008 WL 3833384 (N.D Cal. Aug. 12, 2008) ..............................14, 23

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ................................................................13, 14, 17, 21

*Malone v. U.S. Postal Serv.*,
    833 F.2d 128 (9th Cir. 1987) .................................................................................17

*Newman v. Brandon*,
    No. 1:10-cv-00687 AWI JLT (PC), 2012 WL 4933478 (E.D. Cal. Oct. 16, 2012) ........................18

*Nursing Home Pension Fund v. Oracle Corp.*,
    254 F.R.D. 559 (N.D. Cal. 2008) ............................................................................23

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997) .................................................................................17

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ..............................................................................14

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) .................................................................................22

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
    158 F.3d 1051 (9th Cir. 1998) .................................................................... *passim*

*Vogel v. Tulaphorn, Inc.*,
    No. CV 13-464 PSG, 2013 WL 12166212 (C.D. Cal. Nov. 5, 2013) ............................14

*Wyle v. R.J. Reynolds Indus., Inc.*,
    709 F.2d 585 (9th Cir. 1983) .................................................................................17

**Statutes**

18 U.S.C. § 1501-1511 ...........................................................................................18

18 U.S.C. § 1621-22 .............................................................................................18

18 U.S.C. § 1623(a) .............................................................................................18

CAL. PENAL CODE § 470(b) ....................................................................................18

Civil L.R. 54-5 ......................................................................................................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.       INTRODUCTION

GoPro does not raise sanctions requests of this magnitude lightly.  Yet the circumstances of this case present the paradigm for when terminating sanctions are appropriate.  When faced with facts demonstrating forged evidence, perjury, and grave litigation misconduct directly relating to the claims or defenses in a case, federal courts have granted terminating sanctions as the only appropriate recourse to remedy such egregious litigation misconduct.  As the Ninth Circuit succinctly stated, "[t]here is no point to a lawsuit, if it merely applies law to lies."  *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).  Terminating sanctions should be granted here.

As part of the trademark infringement and unfair competition claims presently pending in this case, GoPro contends that 360Heros infringes GoPro's ABYSS mark.  360Heros contends that it used the mark first.  To support this defense, 360Heros produced a document purportedly demonstrating 360Heros' claim of priority over the ABYSS mark.  This document is an email containing alleged Skype conversations in February and March 2014 between Michael Kintner, 360Heros' founder and principal, and Alexandre Jenny, the founder of Kolor, a company which was later acquired by GoPro. 360Heros claims this conversation shows that Mr. Kintner first conceived of the "abyss" name for its underwater rig and informed Mr. Jenny of this name.  At his deposition, Mr. Kintner testified under oath ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████  Moreover, when GoPro asked in follow-up discovery for the native version of the email, 360Heros maintained that the original email was also unavailable, leaving only the PDF copy that was produced as 360Heros' purported evidence.

Mr. Jenny's Skype chat records for the same conversations, however, *do not* contain the two lines that reference "abyss" as they appeared in Mr. Kintner's email (hereinafter "Forged Document"). Indeed, a forensic examination of Mr. Jenny's files has confirmed that Mr. Jenny's Skype records reflect the actual February and March 2014 chats, were never manipulated, and did not contain

1   references to "abyss."  The results of the forensics analysis lead to only one conclusion: that Mr.

2   Kintner fraudulently inserted references to "abyss" into the Forged Document to create a defense to

3   GoPro's trademark infringement claim.

4         Upon becoming aware of this issue, GoPro's counsel promptly alerted 360Heros of the

5   potential tampering of evidence and perjury.  Despite this notice, 360Heros has not provided any

6   evidence to the contrary, and in fact, has stated – including under oath at deposition – that there is no

7   native format of the produced email or the original Skype chat conversation.  Instead, 360Heros

8   attempted to claw back the document under a meritless assertion of attorney-client privilege.

9   360Heros pursued this baseless "privilege" argument eleven months after 360Heros produced the

10  document and affirmatively relied on it in its discovery responses, and three months after it had been

11  relied upon and discussed by Mr. Kintner at his deposition without any objection from 360Heros'

12  counsel.  Although GoPro informed 360Heros of the waiver, 360Heros forced GoPro to submit a letter

13  brief to the Court seeking the Court's intervention regarding this improper privilege assertion.  GoPro

14  was also forced to sequester the document for months due to 360Heros' meritless privilege claim.

15        The evidentiary record in this case demonstrates that: (1) 360Heros knowingly submitted and

16  continued to rely upon a forged document as its only evidence to its priority of use trademark defense;

17  (2) Mr. Kintner committed perjury █████████████████████████████████; and

18  (3) 360Heros made a meritless assertion of privilege over the forged document instead of providing

19  any contrary evidence.  360Heros' obstruction of justice in this litigation relates to a core issue in this

20  case regarding infringement of the ABYSS mark.  Terminating sanctions are the only appropriate

21  remedy for such obstruction of justice.[1]

22  **II.    STATEMENT OF ISSUES TO BE DECIDED**

23        1.    Whether the Court should grant partial terminating sanctions and/or default against

24  360Heros with respect to GoPro's ABYSS trademark, in view of 360Heros' forged evidence, perjury,

25

---

26  [1] Should the Court grant partial terminating sanctions, GoPro submits that it is entitled to fees, and will move separately for fees and costs, and provide an accounting in compliance with Civil L.R. 54-5.
27  As discussed below, Courts have regularly awarded the defrauded party's fees and costs for the same conduct meriting partial terminating sanctions.

28

1    and grave litigation misconduct.

2            2.      Whether, in the alternative (should the Court decline to impose partial terminating

3    sanctions), the Court should grant instructional and evidentiary sanctions that (1) establish that GoPro

4    has priority of use of the ABYSS mark, which is senior to "Abyss" used by 360Heros, *and* (2) instruct

5    the jury that 360Heros and Mr. Kintner willfully falsified and submitted forged documents and offered

6    false testimony in this case and that the jury may consider these facts in drawing inferences and

7    assessing credibility at trial.

8            3.      Whether the Court in its inherent power should grant GoPro other relief as it sees fit.

9    **III.    STATEMENT OF FACTS**

10           **A.      Priority of the ABYSS Mark is a Critical Issue to the Trademark Claims**

11           GoPro's trademark infringement and unfair competition claims against 360Heros are currently

12   pending in this case.  360Heros has built its entire business based on improperly misappropriating

13   GoPro's trademarks including the HERO[2] and ABYSS marks.  One material issue in GoPro's Abyss-

14   related trademark infringement cause of action is the seniority of the ABYSS mark.  In its Complaint,

15   GoPro alleged that "GoPro obtained and owns common law rights in the ABYSS mark, which has

16   been used in commerce in the United States in connection with its 360 degree camera rig since at least

17   July 31, 2014." (Dkt. 1 at ¶ 17.)  This date reflects the launch of the ABYSS-branded 360 degree

18   underwater rig by Kolor, a company now owned by GoPro.  (Chin Decl. Ex. 1 at 6.)  Four months

19   after the launch of the ABYSS rig, 360Heros announced the development of a 360 degree underwater

20   camera rig with the name "360ABYSS."  (*Id.*)  Indeed, it is undisputed that 360Heros has sold

21   products under the designation 360ABYSS.  (*See* Dkt. 1 at ¶ 41; Dkt. 24 at ¶ 41; Chin Decl. Ex. 2 at

22   20:20-24.)  360Heros, however, contends that it does not infringe the ABYSS mark because it has

23   priority, *i.e.*, it purportedly used the 360ABYSS mark in commerce *before* July 31, 2014.  (*See* Dkt.

24   24 at ¶¶ 84-86; Chin Decl. Ex. 2 at 17:1-18).)  360Heros' priority-of-use defense is a critical issue in

25   this case because "ownership of a mark is determined by priority of use."  *Am. Rena Int'l Corp. v. Sis-*

26

27   [2] GoPro is simultaneously filing for summary judgment on its HERO-related federal and common law
     trademark infringement claims and its unfair competition claim.

28

1   *Joyce Int'l Co.*, No. CV 12-6972 FMO (JEMx), 2015 WL 12732433, at *7 (C.D. Cal. Dec. 14, 2015)

2   (internal citations omitted).

3       **B.**      **360Heros' Forged Evidence of First Use of "Abyss"**

4           To support its contention of priority, in November 2016, 360Heros produced a document,

5   Bates-numbered 360H-02458-2459, in a static PDF format, without any confidentiality designations.

6   (Forged Document, Chin Decl. Ex. 3.)  This document is an e-mail thread containing two messages.

7   The earliest message was sent from Michael Kintner to himself on July 20, 2015, and contains an

8   alleged partial transcript of early-2014 Skype conversations between Mr. Kintner and Alexandre

9   Jenny, the founder of GoPro's subsidiary, Kolor.  Two entries, each containing the word "abyss" are

10  highlighted in the Forged Document:

11  [2/5/14, 11:36:19 AM] Michael Kintner: while looking we've got some auto stitching issues with our v2 underwater abyss gear, can we discuss?

12
13  [3/20/14, 12:49:22 PM] Michael Kintner: Hello Alexandre
    [3/20/14, 12:49:31 PM] Michael Kintner: Do you have a second to discuss our v2 underwater abyss?
    [3/20/14, 12:49:48 PM] alexandre jenny: hi Mike. Sure, but not for long ?

14  (*Id.*)  In the second message, dated January 15, 2016, Mr. Kintner forwards the alleged transcript to

15  two individuals, including his attorney Carl Vahl, explaining that it contains "two mentions of the

16  abyss with Kolor."  (*Id.*)  In written discovery, 360Heros identified the Forged Document as

17  responsive to GoPro requests for material relevant to GoPro's rights in its ABYSS trademark, among

18  others.  (*See* Chin Decl. Ex. 4 at 46-47 (identifying the Forged Document as responsive to Request

19  No. 79 relating to "COMMUNICATIONS CONCERNING the trademark rights of Go[P]ro and/or

20  Kolor in the HERO and ABYSS trademarks.").)  Importantly, the Forged Document is the *only*

21  documentary evidence in the record that purports to show that 360Heros used the name "abyss" before

22  July 31, 2014.[3]

23  _____

24  [3] ███████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████ (Chin Decl. Ex. 5 (emphasis added); *see also, e.g.*, Chin Decl. Ex. 2 (Kintner Depo.) at
    18:7-21:6 (██████████████████████████████████████████████████

27  Ex. 6 at ¶¶ 8, 44 (Mr. Kintner's sworn declaration testimony regarding search for Skype documents).)
    Likewise, ███████████

28

**C.      360Heros Claims Authenticity and Veracity of the Forged Document**

To investigate 360Heros' defense, GoPro entered the Forged Document as an exhibit at Mr. Kintner's July 25, 2017 deposition.  (Chin Decl. Ex. 7 at 257:23-258:4.)  Under oath, Mr. Kintner testified that



(*Id.* at 256:12-25.)



(*Id.* at 258:5-260:7 (emphases added).)

**D.    GoPro Obtained Forensic Confirmation of the Falsity of the Forged Document and Notified 360Heros**

As part of its investigation into 360Heros' priority claim and the Forged Document, GoPro also researched and located Mr. Jenny's Skype conversations with Mr. Kintner.  Mr. Jenny's Skype records not only lacked the highlighted lines present in the Forged Document, but showed that the first reference to any "abyss" rig was not until October 10, 2014—months after GoPro's use of the mark.

To verify its suspicion that Mr. Kintner had forged evidence, GoPro retained a digital forensic expert, Derek Duarte of BlackStone Discovery ("BlackStone") "to independently identify, analyze,

1    and verify the scope of electronic communications exchanged using the Skype program between

2    Alexandre Jenny and Michael Kintner from November 8, 2012 to February 17, 2015." (Chin Decl.

3    Ex. 8 (Duarte Report) at 1.)  With Mr. Jenny's permission,[4] BlackStone independently conducted a

4    forensic analysis by connecting to Mr. Jenny's computers via WebEx remote access in two phases.

5    (*Id.* at 3-4.)  For the first phase, on September 27, 2017, BlackStone accessed an old Windows

6    computer and identified Skype database file, "main.db."  It also verified that "the database files and its

7    contents in the repository had not been accessed or modified after May 23, 2014."  (*Id.* at 4.)  Using

8    Access Data FTK Imager, a forensic imaging tool, BlackStone obtained a forensic image of the Skype

9    database, and used the forensic image to generate a file containing all Skype communications between

10   Mr. Jenny and Mr. Kintner between November 8, 2012 and March 20, 2014.  (*Id.* at 5 and Duarte

11   Report Ex. 10.)  BlackStone then compared the extracted data against a version that Mr. Jenny had

12   provided to GoPro, confirming that "two contained the same communications between Mr. Jenny and

13   Mr. Kintner between November 8, 2012 and March 20, 2014" except for the forensically retrieved

14   copy disclosing emoticons, pictures, and symbols in code rather than as graphics.  (*Id.* at 5.)  In

15   addition, BlackStone searched for the term "abyss," and confirmed that the term "abyss" did not exist

16   in the imaged Skype database for those dates.  (*Id.* at 5-7.)

17        For the second phase, on October 10, 2017, BlackStone accessed Mr. Jenny's second computer

18   in France to obtain a forensic image of the Skype database files on that computer.  (*Id.* at 7-8.)

19   BlackStone confirmed that the database files included the same contents of the older file extracted in

20   the first phase, in addition to more recent communications between Mr. Jenny and Mr. Kintner from

21   June 18, 2014 through approximately February 17, 2015.  Blackstone again compared the extracted

22   data against Mr. Jenny's version, and concluding that "[t]he two contained the same Skype

23   communications between Mr. Jenny and Mr. Kintner between June 18, 2014 and February 17, 2015,"

24   except for rendering emoticons, pictures, and symbols in code.  (*Id.* at 8.)  In view of the above

25   analysis, Blackstone reached the following conclusions:

26

27   ───────────────
     [4] French privacy laws required BlackStone to obtain Mr. Jenny's express consent to access his
     computer and Skype database.

28

1   Based on this data, there are no Skype communications on February 5, 2014 or
2   March 20, 2014 between the 'ajenny-kolor' and 'mkintner' user names
    containing the word 'abyss.'

3   (*Id.* at 3.)  BlackStone preserved the original Skype "main.db" source file on an encrypted thumb drive

4   stored in a safe in GoPro's Paris office; only BlackStone has the password to this drive.  (*Id.* at 9.)

5   GoPro promptly produced the extracted Skype conversations created by BlackStone, in addition to

6   what GoPro had already produced from Mr. Jenny, during fact discovery.  (Chin Decl. ¶¶ 12-18, Exs.

7   10-16.)

8   BlackStone's forensically captured transcripts confirm the falsity of the Forged Document.

9   The highlighted lines in the Forged Document referencing the "underwater abyss" do not appear

10  anywhere in the forensically captured transcripts.  (*See* Chin Decl. Ex. 12.)  BlackStone's analysis is

11  summarized below:

12  As shown below, the term "abyss" does not appear anywhere in the February 5,
13  2014 Skype communications between Mr. Jenny and Mr. Kintner:

| E | F | G |
|---|---|---|
| Date | Timestamp | body_xml |
| 2014-02-05 | 17:31:46 | hi Mike |
| 2014-02-05 | 17:32:25 | hello |
| 2014-02-05 | 17:33:00 | how r you today? |
| 2014-02-05 | 17:33:01 | do you have 5 minutes ? |
| 2014-02-05 | 17:33:04 | sure |
| 2014-02-05 | 17:33:06 | great. |
| 2014-02-05 | 17:33:21 | Did you have time to test AVP1.5 / APG 3.5 ? |
| 2014-02-05 | 17:33:35 | i sure do |
| 2014-02-05 | 17:33:40 | feedback ? |
| 2014-02-05 | 17:34:19 | i just installed everything this morning and am using it to try to create my 3D content. |
| 2014-02-05 | 17:34:27 | I am actually doing it right now as we speak |
| 2014-02-05 | 17:34:48 | I can provide feedback this afternoon if you like when I am finished |
| 2014-02-05 | 17:35:09 | sure. a quick email with some feedback is nice to have <ss type="smile">:)</ss> |
| 2014-02-05 | 17:35:21 | ok no problem |
| 2014-02-05 | 17:35:26 | thanks. |
| 2014-02-05 | 17:35:29 | <ss type="smile">:)</ss> |
| 2014-02-05 | 17:35:30 | Another question. |

| | | |
|---|---|---|
| 2014-02-05 | 17:35:33 | sure |
| 2014-02-05 | 17:35:51 | do you have or know a matthew davis as customer ? |
| 2014-02-05 | 17:36:06 | ummm, not sure let me check |
| 2014-02-05 | 17:38:28 | I have a couple of Mathew&apos;s but no Davis |
| 2014-02-05 | 17:38:56 | ok cool. I need to check a bit around to see that. Thanks for confirmation |
| 2014-02-05 | 17:39:18 | nothing more from me. I let you work, I&apos;m going home <ss type="smile">:)</ss> |
| 2014-02-05 | 17:39:38 | ok have a great day!  enjoy your evening   <ss type="smile">:)</ss> |

(Chin Decl. Ex. 8 at 6.)

BlackStone also checked the Skype communications between Mr. Jenny and Mr. Kintner for any entries on March 20, 2014 that may include the term, "abyss," and concluded that the term also does not appear anywhere in those communications as shown below:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 816 | Hello Alexandre | | 6575 | 24915 | #ajenny-kolor/$m | mkintner | 2014-03-20 | 17:49:31 |
| 817 | Do you have a second? | | 6575 | 24919 | #mkintner/$ajenn | mkintner | 2014-03-20 | 17:49:37 |
| 818 | hi Mike. Sure, but not for long ? | | 6575 | 24920 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:49:57 |
| 819 | ok | | 6575 | 24921 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:49:59 |
| | `<partlist alt="">` | | | | | | |
| | `<part identity="ajenny-kolor">` | | | | | | |
| | `<name>alexandre jenny</name>` | | | | | | |
| | `<duration>24</duration>` | | | | | | |
| | `</part>` | | | | | | |
| | `<part identity="mkintner">` | | | | | | |
| | `<name>Michael Kintner</name>` | | | | | | |
| | `<duration>24</duration>` | | | | | | |
| | `</part>` | | | | | | |
| 820 | `</partlist>` | | 6575 | 24927 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:50:12 |
| | `<partlist alt="">` | | | | | | |
| | `<part identity="ajenny-kolor">` | | | | | | |
| | `<name>alexandre jenny</name>` | | | | | | |
| | `<duration>24</duration>` | | | | | | |
| | `</part>` | | | | | | |
| | `<part identity="mkintner">` | | | | | | |
| | `<name>Michael Kintner</name>` | | | | | | |
| | `<duration>24</duration>` | | | | | | |
| | `</part>` | | | | | | |
| 821 | `</partlist>` | | 6575 | 24928 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:50:36 |

(*Id.* at 7.)

In addition, the absence of the term "abyss" in the forensic transcript is consistent with subsequent communications between Mr. Kintner and Mr. Jenny, whereas the lines added to the Forged Document are not.  The term "abyss," for example, does not appear in the forensic transcript until October 10, 2014, when Mr. Kintner provides <u>positive</u> feedback about *Kolor's* Abyss rig, and notably, makes no objection to Kolor's use of the name.  (*See* Chin Decl. Ex. 16 at p. 2 (██████████)

1   ███████████████████████████████████████████████ ) (emphasis added).)  In

2   contrast to Mr. Kintner's reaction, in a November 2014 email, Mr. Jenny complained to Mr. Kintner

3   after Mr. Jenny discovered 360Heros started marketing its underwater 360Abyss rig, stating that "[w]e

4   were first on that name."  (Chin Decl. Ex. 17 (native email).)[5]

5        Accordingly, in view of the forensic analysis, the uncontroverted factual record[6] regarding the

6   Forged Document establishes that (1) Mr. Kintner created a fraudulent account of his Skype messages

7   with Mr. Jenny which 360Heros then relied upon in support of its prior use defense, and (2) Mr.

8   Kintner committed perjury when he testified at his July 25, 2017 deposition that ████████████

9   ████████████████████████████████████████████████████████████████████

10  █████████████

11       **E.    GoPro Promptly Notified 360Heros of the Forged Document**

12       Upon identifying the falsity of the Forged Document, GoPro promptly brought this serious

13  misconduct to 360Heros' attention.  On September 20, 2017, GoPro explained to 360Heros that Mr.

14  Kintner had inserted or altered Skype chat lines in the Forged document to create the "fact" that he

15  was the first to use the Abyss name.  (*See, e.g.*, Chin Decl. Ex. 19 at 3.)  360Heros initially indicated

16  that it needed to investigate the Forged Document, and would consider obtaining its own forensic

17  experts.[7]  That same day, GoPro asked 360Heros to provide the Forged Document in its native form,

18  including both parts of the email chain and the accompanying metadata.  (*See* Chin Decl. Ex. 20 at 1-2

19  ("Regarding the email produced by 360Heros as a PDF file at Bates No. 360H-02458, please produce

20  a native copy of the email sent from Mr. Kintner to himself at 8:50PM on July 20, 2015, along with all

21  metadata for the message.").)  After the parties met and conferred, in an October 11, 2017 email,

22  _____

23  [5] 360Heros produced a version of this email purporting to have a response from Mr. Kintner, but it is possible that Mr. Kintner also falsified this response, as 360Heros' counsel stated "[o]ur client was unable to locate the original email sent from Kintner to Jenny on 11/24/14" (Chin Decl. Ex. 18) but

24  was able to locate and produce other emails in native format.  (*Id.* ¶ 28.)  GoPro searched its files and was not able to find any such response from Mr. Kintner.

25
26  [6] As set forth below in the next section, 360Heros had ample opportunity to present evidence to the contrary during fact discovery, but failed to do so, and resorted to gamesmanship instead.

27  [7] To date, GoPro has not been notified whether 360Heros did so and 360Heros has not asked to review Mr. Jenny's Skype database.

28

1    360Heros' counsel stated that "[o]ur client is investigating whether and how to respond to your

2    requests but we have not resolved all issues as of this moment."  (Chin Decl. Ex. 21.)

3            **F.      360Heros' Baseless Assertion of Privilege Over the Forged Document**

4            360Heros stood at a critical juncture.  Fact discovery was still open, and at this point,

5    360Heros could have proceeded in good faith, by producing evidence to rebut GoPro's position

6    regarding the Forged Document, responding to GoPro's request for a native version of the Forged

7    Document, and/or engaging its own forensic expert.[8]  Instead, 360Heros tried to hide the truth under

8    the cloak of privilege.  Eleven months after producing the document and relying upon it for its defense

9    in discovery responses, and three months after it was used as a deposition exhibit without any

10   objections by 360Heros' counsel, on October 16, 2017, 360Heros suddenly attempted to claw back the

11   Forged Document as attorney-client privileged.  (Chin Decl. Ex. 19 at Attach. 1.)  360Heros refused to

12   back down even after GoPro explained the baselessness of 360Heros' privilege assertion, and

13   repeatedly warned 360Heros that it would file a motion for terminating sanctions upon prevailing.  (*Id.*

14   Ex. 19 at 3; *see also* Dkt. 124 at 2 n. 5 ("Once the Court orders 360Heros to produce the complete

15   document, GoPro expects to move for terminating sanctions."); Dkt. 131 at 8 (same).)  When

16   360Heros refused to withdraw its privilege assertion, GoPro sought the Court's assistance in a letter

17   brief filed on November 2, 2017.  (Dkt. 124; 128.)  However, between October 2017 and January

18   2018, 360Heros' meritless privilege assertion forced GoPro to sequester the Forged Document while

19   the dispute was pending (see Dkt. 124 at 1 n. 1), and thereby prevented GoPro from seeking

20   terminating sanctions for months.  On January 26, 2018, the Court ultimately ruled in GoPro's favor,

21   holding that "attorney-client privilege was waived, the document cannot be clawed back as privileged,

22   and 360Heros must produce the original, unredacted document."  (Dkt. 161 at 1.)

23           Furthermore, while the letter brief was still pending, but long after the close of fact discovery,

24   360Heros produced a document on January 19, 2018, Bates numbered 360H-22830 to 22831.  (Chin

25   Decl. Ex. 22, hereinafter "the Timeline".)  █████████████████████████████████

26

27   ─────────────────────
[8] Having chosen not to engage in any of these efforts and the gravity of its misconduct, 360Heros
     should not be allowed at this late stage to pursue any of these options.

28

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 (*Id.* at 1.)[9]  At his January 31, 2018 deposition, Mr. Kintner testified that ███████████

6 ██████████████████████████████████████ (Chin Decl. Ex. 24 at 132:23-134:12.)

7 Accordingly, while the privilege dispute was still pending, 360Heros attempted to perpetuate its

8 fraudulent priority claim by ████████████████████████████ Only now, with

9 the falsity of the Forged Document and Mr. Kintner's perjury confirmed, and 360Heros' meritless

10 privilege assertion disposed of, is the extent of 360Heros' litigation misconduct[10] laid bare for the

11 Court.  Full terminating sanctions with respect to GoPro's claims regarding the ABYSS mark are the

12 minimum relief appropriate for this egregious misconduct.

13

14

15 [9] ███████████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████ (*Id.*)  Mr. Joergen Geerds, Freedom360's
founder, however, testified that this submission "explains and describes the presentation I gave at the

18 IVRPA Conference in New York in 2012," and confirmed that Mr. Kintner was "*sitting in the second
row on the far right side*" at that presentation.  (Chin Decl. 23 at 58:10-60:3, 138:9-11 (testifying the

19 June 21, 2012 date in the submission was accurate), 141:4-143:10 (emphases added).)  In attending the
IVRPA conference presentation by Mr. Geerds, Mr. Kintner knew the exact dates of the conference in

20 June 2012.  Yet, Mr. Kintner wrote "████████████████████████████  This fraudulent
statement in the Timeline serves to show that the entries about the purported first use of "Abyss" are

21 equally false.

22 [10] As the Court knows, and the record in this litigation amply reflects, 360Heros' litigation misconduct
has infected the entirety of this case, not just issues surrounding the Forged Document, and is amply

23 reflected in the library of adverse discovery orders against 360Heros.  (*See, e.g.*, Dkt. 45 (denying
360Heros' untimely attempt to introduce claim construction witness testimony); Dkt. 47 (denying

24 360Heros' joint letter compelling GoPro discovery responses); Dkt. 54 (denying 360Heros leave to
amend its infringement contentions to add the GoPro Omni rig);  Dkt. 74 (ordering 360Heros to

25 produce documents); (Dkt. 80 (same); Dkt. 151 (same); Dkt. 119 (denying 360Heros' joint letter
regarding GoPro's 30(b)(6) witnesses); Dkt. 161 (granting GoPro's joint letter regarding waiver of

26 privilege for the Forged Document and denying 360Heros' motion for sanctions regarding alleged
protective order violation).)  360Heros' litigation misconduct extends beyond this Court, as reflected

27 by its egregious forum-shopping in the District of Delaware to avoid adverse decisions by this Court,
which it engaged in after GoPro notified 360Heros of the patent standing issue.  (*See generally* Chin

28 Decl. Ex. 25.)

IV.    **ARGUMENT**

   A.    **Legal Standard**

Ordinarily considered a drastic remedy, terminating sanctions are uniquely appropriate when a party proffering fraudulent evidence is before the Court.  "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation and alteration marks omitted); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017).  This inherent authority includes the powers to impose terminating sanctions, including dismissals, when parties have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also Chambers*, 501 U.S. at 58 (grant of full fees sanction appropriate to remedy "relentless, repeated fraudulent and brazenly unethical efforts" of party); *Valley Eng'rs*, 158 F.3d at  1058 ("There is no point to a lawsuit, if it merely applies law to lies.  True facts must be the foundation for any just result."); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1993) (full terminating sanctions warranted where "a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.") (citation omitted); *Da-Silva v. Smith's Food & Drug Centers, Inc.*, No. 2:12-CV-00595-GMN-VCF, 2013 WL 2558302, at *2 (D. Nev. June 8, 2013) ("Federal courts have long recognized that providing false deposition testimony … constitutes perjury and, in effect, constitutes fraud on the court."); *Indiezone, Inc. v. Rooke*, No. 13-CV-04280-VC, 2014 WL 4354122, at *4 (N.D. Cal. Sept. 2, 2014), *aff'd*, No. 14-16895, 2017 WL 6379129 (9th Cir. Dec. 14, 2017) ("Dismissal is warranted in a case such as this one where a party has knowingly submitted false and misleading documents.").

In deciding whether to impose terminating sanctions, a district court is required to make a finding of "willfulness, fault, or bad faith."  *Leon*, 464 F.3d at 958 (citation omitted).  A broad range of "[d]isobedient conduct not shown to be outside the litigant's control meets this standard,"

including falsification of documents and perjured deposition testimony.[11]  *In re*

*Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006) (citation

omitted); *see also Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is

an appropriate sanction for falsifying a deposition."); *Vogel v. Tulaphorn, Inc.*, No. CV 13-464 PSG

(PLAx), 2013 WL 12166212, at *4 (C.D. Cal. Nov. 5, 2013) ("When a party falsifies evidence of

central importance to a case, this shows bad faith, willfulness, or fault, and thus supports the Court's

exercise of its inherent power to dismiss a case.") (citations omitted); *Arnold v. City of El Dorado*,

No. 2:10-CV-3119 KJM GGH, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012) ("Clearly,

committing perjury is acting in 'bad faith.'") (citations omitted).

The district court should also consider the following factors, but "need not make explicit

findings regarding each of these factors:" "(1) the public's interest in expeditious resolution of

litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking

sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability

of less drastic sanctions."  *Leon*, 464 F.3d at 958 (citation omitted); *but see Arnold*, 2012 WL

3276979, at *14 (holding that it was unnecessary to address the five factors when confronted with

perjury, since "*perjury stands on its own as a reason for dismissal.*") (emphasis added).

Courts have readily found bad faith and granted terminating sanctions when confronted with

fraudulent documents and/or perjured testimony.  These courts have uniformly held that terminating

sanctions, rather than lesser sanctions are necessary in order to restore the integrity of the judicial

proceedings and deter repetition of willful misconduct.   The following cases granted terminating

sanctions in view of deceptive acts similar to those at issue here:

- In *American Rena*, defendants accused of trademark infringement asserted a priority-
  of-use defense akin to 360Heros' defense here.  To support their contention,
  defendants produced false and fabricated declarations purportedly establishing their

---

[11] The law is clear that fraudulent misconduct consistently warrants terminating sanctions, and stands apart from lesser misconduct that typically does not warrant terminating sanctions, such as spoliation of documents.  *Cf. Keithley v. Home Store.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 3833384, at *16 (N.D Cal. Aug. 12, 2008) (awarding adverse inference instruction and fees but not terminating sanctions for spoliation).

prior use, and obstructed the plaintiff's efforts to obtain discovery of the declarants. *Am. Rena*, 2015 WL 12732433 at *8-11.  The Court imposed full terminating sanctions and awarded attorneys' fees and costs, holding "[t]here is an undeniably close nexus between the subject-matter of the false declaration (i.e., prior use of the [] marks) and the core trademark claims and defenses in this action…which strongly supports the imposition of terminating sanctions." *Id.* at *33.

- In *Combs*, the Ninth Circuit affirmed a grant of terminating sanctions when the plaintiff and his counsel colluded to "alter his deposition in material respects," including "changes [that] dealt with issues of central importance in the upcoming summary judgment hearing." *Combs*, 927 F.2d at 488.  The Ninth Circuit agreed the district court did not need to address the merits of the case, and imposed further costs and fees as sanctions for a frivolous appeal.  *See id.* at 489 ("The mendacity of the client and the combined fraud and incompetence of his counsel are so egregious that there is no need to reach the merits of the motion for summary judgment.  The case was properly dismissed.").

- In *Valley Engineers*, the Ninth Circuit affirmed a grant of terminating sanctions where a party intentionally (1) failed to produce a memorandum that "any experienced lawyer would call a 'smoking gun'" in defiance of discovery requests, and subsequently court orders, (2) improperly asserted the attorney-client privilege over the memorandum after it had waived the privilege, and (3) had its party witnesses deny at their depositions that the memorandum existed.  *Valley Eng'rs*, 158 F.3d at 1053-55.  The Ninth Circuit concluded that "[w]here a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate.  It was on this record." *Id.* at 1058.

- In *Indiezone*, the plaintiff produced an Irish corporate name change document, which the defendants' Irish corporate law expert analyzed, and testified was fraudulent in view of the document having the wrong barcode number and footer references for its

purported date.  2014 WL 4354122, at *1-2.  The plaintiff's CEO also submitted a

declaration providing false testimony in support of this document.  *Id.* at 2.  The Court

also found that the "only remotely plausible explanation of the evidence is that [the

plaintiff] was attempting to create a sham plaintiff for purpose of evading an

arbitration provision."  *Id.*  In view of this fraudulent conduct, the Court awarded

terminating sanctions, finding less severe sanctions inappropriate because "[t]he fraud

strikes to the heart of the case."  *Id.* at *4.  The Court also awarded fees and costs

including fees for the Irish law expert.  *Id.* at *3 ("The defendants have been forced to

expend a tremendous amount of time and money responding to each of the plaintiffs'

motions to add a plaintiff and litigating this motion for sanctions, *including hiring

foreign counsel due to the foreign status of the professed plaintiffs*.") (emphasis

added.)  Because "[c]ounsel for the plaintiffs also participated in this bad faith

conduct," the Court ruled that counsel and his clients "are held jointly and severally

liable for this award because each contributed to the fraudulent conduct."  *Id.* at *4.

- In *Da-Silva*, the plaintiff gave false deposition testimony that she had never had a
  preexisting lower back injury before the alleged accident that was a central issue in
  the case.  *Da Silva*, 2013 WL 2558302 at *1-2.  The Court granted terminating
  sanctions because the plaintiff's "false testimony cannot be blamed on confusion or
  mistake," and "goes to a highly material issue in the case."  *Id.* at *3-4.  The Court
  held that less severe sanctions were inappropriate since "[t]he integrity of the judicial
  process must be protected and the defendant should not have to bear continuing
  expense of defending this action against a plaintiff who has callously deceived the
  court, the defendant, her doctors and her own attorney, in the hope of gaining
  undeserved compensation based on a preexisting condition."  *Id.* at *4.

- In *Arnold*, the plaintiff gave false deposition testimony regarding a central issue in the
  case, whether she had been using her cell phone to videotape a courthouse lobby.
  *Arnold*, 2012 WL 3276979, at *11-12.  In view of this false testimony, with the
  plaintiff's failure to cooperate in discovery as a further aggravating factor, the Court

imposed terminating sanctions, "conclud[ing], *particularly in light of plaintiff's perjury*, that no sanction short of dismissal would be appropriate." *Id.* at *15 (emphasis added).

- In *IV Solutions, Inc. v. Office Depot Emp. Welfare Benefit Plan*, the plaintiff submitted a false invoice for medication purportedly from ActSys and represented that the invoice was authentic at his deposition.  No. EDCV 07-1603-VAP (JWJx), 2009 WL 10314274, at *6 (C.D. Cal. May 13, 2009).  The defendant could not obtain a copy of the same invoice from ActSys and discovered that that authentic invoices looked different from the plaintiff's invoice.  *Id.*  Defendant moved for terminating sanctions based on the purported false invoice and perjury at deposition.  *Id.*  After analyzing the five-factor test, the district court awarded terminating sanctions based on the fraudulent conduct.  The district court found: "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook, and the perjury committed to undergird it." *Id.* at *9.[12]

- In *Gonzalez v. Texaco, Inc.*, this Court awarded terminating sanctions against two plaintiffs in a toxic tort case, both of whom admitted at their depositions that they never actually had the cancer that was allegedly caused by the defendant's toxic waste dumping.  No. C 06-02820 WHA, 2007 WL 2255217, at *1-2 (N.D. Cal. Aug. 3, 2007).

Here, terminating sanctions are strongly warranted in view of 360Heros' fraudulent bad faith

---

[12] In addition, the Ninth Circuit has consistently affirmed grants of terminating sanctions for far less wrongdoing than here.  *See, e.g., Anheuser-Busch*, 69 F.3d at 348 (affirming terminating sanctions where party concealed documents and committed perjury by lying about their existence); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096-97 (9th Cir. 2007) (same, for party's "contumacious refusal to produce required discovery"); *Leon*, 464 F.3d at 956 (same, where party spoliated evidence by deleting files in unallocated space on hard drive); *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (same, for party's failure to comply with court-ordered discovery); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946-47 (9th Cir. 1993) (same, for "repeated and flagrant" discovery abuses, including failure to appear for noticed deposition); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 129 (9th Cir. 1987) (same, for party's noncompliance with court order); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (same, for party's false denials and deliberate efforts to obstruct discovery).

1    conduct, and consideration of the five factors.

2         **B.      360Heros' Bad Faith Conduct**

3         Courts have had "little difficulty concluding that defendants acted in bad faith" when faced

4    with a party that submits false evidence bearing a nexus to the claims and defenses of the case, and

5    engages in perjury and obstructionist tactics in sustaining that falsehood. *Am. Rena*, 2015 WL

6    12732433 at *23; *see also Combs*, 927 F.2d at 488 ("Dismissal is an appropriate sanction for

7    falsifying a deposition."); *Arnold*, 2012 WL 3276979, at * ("Clearly, committing perjury is acting in

8    'bad faith.'") (citations omitted).  Here, all of 360Heros' willful acts surrounding the Forged

9    Document evince bad faith.

10        360Heros' fabrication and submission of the Forged Document demonstrates that 360Heros

11   acted in bad faith.  The Forged Document contains fabricated chat lines intended to show 360Heros'

12   prior use of the "abyss" mark. *See supra* Part III.A-B.  Mr. Kintner knowingly prepared the Forged

13   Document, which was addressed to his attorneys, and 360Heros submitted it in this case "for the

14   purpose of establishing and supporting [360Heros'] prior use defense." *Am. Rena*, 2015 WL

15   12732433, at *24.  Furthermore, Mr. Kintner provided perjured testimony at his deposition ▮

16   ▮▮▮▮▮▮▮▮▮.  Such perjured testimony at his deposition regarding the Forged

17   Document further demonstrates bad faith. *Da Silva*, 2013 WL 2558302 at *1-2; *Newman v. Brandon*,

18   No. 1:10-cv-00687 AWI JLT (PC), 2012 WL 4933478, at *4 (E.D. Cal. Oct. 16, 2012); *Arnold*, 2012

19   WL 3276979, at *4 ("[W]hen a party falsely testifies to a fact material to the substance of a litigation,

20   such is anathema to the function of the courts…. [P]erjury on any material fact strikes at the core of

21   the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking

22   process.").[13]  Finally, 360Heros' untimely and meritless assertion of privilege over the Forged

23   Document was nothing more than a delay tactic to stave off GoPro's ability to seek sanctions.  This is

24   a classic example of "obstructionist tactics employed solely to frustrate a party's ability to defend

25

26   _____

     [13] 360Heros' fabrication of evidence and perjury also constitute criminal litigation misconduct. *See,*
     *e.g.*, 18 U.S.C. § 1501-1511 (obstruction of justice); 18 U.S.C. § 1621-22 (perjury and subornation of
27   perjury); 18 U.S.C. § 1623(a) (false material declaration or use of a false document in federal court);
     CAL. PENAL CODE § 470(b) (forgery).

28

itself in an action" that warrants a finding of bad faith. *Am. Rena*, 2015 WL 12732433, at *26

(quotation omitted) (finding bad faith where a party made multiple efforts to prevent the plaintiff from

deposing a witness); *accord Valley Eng'rs*, 158 F.3d at 1055 (holding failure to produce key document

and wrongful privilege assertion to be "a shocking betrayal of obligations to the court and opposing

counsel" evincing bad faith); *Indiezone*, 2014 WL 4354122, at *3 ("The Court finds that the plaintiffs

submitted multiple misleading and false declarations and fraudulent documents purporting to establish

the existence of eoBuy, in various forms.  Bad faith of this degree easily supports an award of

sanctions under the Court's inherent powers.").

### C.      The Public Interest in Expeditious Resolution of Litigation and the Court's Need to Manage its Docket

These factors, which are usually reviewed together, both weigh in favor of terminating

sanctions in view of the fraud underlying the Forged Document and Mr. Kintner's perjured testimony.

The public's interest in expeditious resolution "favors dismissal because *a case founded on perjured*

*testimony and falsified evidence should be disposed of with dispatch*, in order that the Court can turn

its attention to other, meritorious, disputes." *IV Sols.*, 2009 WL 10314274, at *8 (emphasis added).

Likewise, the Court's need to manage its docket weighs in favor of granting terminating sanctions

because 360Heros' "introduction of perjured documents interferes with the Court's ability to manage

its docket, as it delays the hearing of other matters." *Id.; accord Indiezone*, 2014 WL 4354122, at *4

(holding both factors supported terminating sanctions "because the sanctionable conduct has

unnecessarily prolonged this case and wasted a tremendous amount of the Court's time."); *Arnold*,

2012 WL 3276979, at *14 ("[W]here a court order is violated or discovery belatedly is produced,

factors 1 and 2 support preclusive sanctions.").  Further, as set forth above, there is "'ample evidence

of the time and resources'" that both GoPro and the Court have been forced to spend "'in investigating

and resolving the' litigation misconduct," which further weighs in favor of granting terminating

sanctions. *Am. Rena*, 2015 WL 12732433, at *28 (quoting *Leon*, 464 F.3d at 958 n. 5).  Finally,

throughout this litigation, 360Heros has consistently failed to comply with the Court's discovery

orders.  (*See, e.g.*, Dkt 159 at 2-3 (summarizing 360Heros' noncompliance with discovery orders,

including Dkts. 74, 80, and 151).)  360Heros' noncompliance further supports terminating sanctions

1    under these factors since its violations "undermine the court's management of the action, as well as its

2    overall judicial function of resolving the claims and issuing orders accordingly." *Am. Rena*, 2015 WL

3    12732433, at *28; *Arnold*, 2012 WL 3276979, at *14.

4         **D.    The Risk of Prejudice to GoPro**

5         This factor strongly favors the imposition of terminating sanctions.  In similar cases where a

6    party has been forced to litigate a defense based entirely in fraud—such as 360Heros' defense of prior

7    use—and incur further additional expenditures to investigate the fraud, courts have readily found

8    prejudice.  In *IV Solutions,* where the district court had to consider similar case of a fraudulently

9    created document and accompany perjury at deposition purporting to authenticate the falsified

10   document, the district court found prejudice to the defendants having to undertake "effort and expense

11   to verify independently every fact in the administrative record" to address the unlawful misconduct.

12   *IV Sols.,* 2009 WL 10314274, at *8-9.  Similarly, in *American Rena*, the court held that the

13   defendant's submission of falsified evidence of a prior trademark use demonstrated prejudice since,

14   had the court believed them to be true, "the court could have found that they established or raised a

15   genuine issue of material fact as to defendants' defenses and counterclaims." *Am. Rena*, 2015 WL

16   12732433, at *29.  Furthermore, the *Am. Rena* court was affronted by the defendant's attempt to cover

17   up the misconduct and found that "defendants' offer to give up their right to rely on the declarations in

18   any way as this case approaches trial…makes a mockery of the judicial process."  *Id.* (internal

19   quotations omitted); *accord Valley Eng'rs*, 158 F.3d at 1055; *Indiezone*, 2014 WL 4354122, at *4

20   (holding showing of prejudice was "not needed" in view of bad faith).

21        GoPro has been prejudiced by 360Heros' misconduct.  GoPro had to investigate 360Heros'

22   prior use defense, which would not exist but for the fraud.  GoPro then had to locate and hire an expert

23   to forensically investigate the Skype chat information.  Those expenditures would have been

24   unnecessary had 360Heros not asserted, produced and maintained the fraud.  Moreover, once GoPro

25   informed 360Heros of GoPro's findings of fraud regarding the Skype chat, 360Heros did not drop the

26   issue.  Instead, 360Heros maintained the fraud and attempted to cover it up with an eleventh-hour

27   attempt to assert privilege over the Skype chat document.  That clawback attempt is, if anything, even

28   more egregious than the defendants' offer in *American Rena*, and likewise demonstrates that GoPro

1    "would be further prejudiced by the significant costs that would be required to litigate against parties

2    who exhibit little, if any, regard for the integrity of the judicial process." *Id.* at *30.  360Heros'

3    misconduct is exactly the type that "threatens to interfere with the rightful decision of the case" and

4    the prejudice it inflicts upon GoPro strongly favors terminating sanctions. *Id.* at *33 (citation

5    omitted).

6        **E.    Public Policy**

7        The public policy favoring disposition of cases on their merits "always weighs against

8    dismissal," but cannot be dispositive by itself. *See Am. Rena*, 2015 WL 12732433, at *30 (citation

9    omitted).  When all other factors favor terminating sanctions, as they do here, this factor "does not

10   outweigh the other factors favoring terminating sanctions." *Id.*; *see also Leon*, 464 F.3d at 960-61.

11   More importantly, at least one court has ruled that "[t]his factor weighs heavily in favor of terminating

12   sanctions" when a party fabricated evidence to support its claim for damages. *IV Sols.*, 2009 WL

13   10314274, at *9.

14       **F.    Availability of Less Drastic Sanctions**

15       A sanction less than terminating sanctions would be insufficient to deter 360Heros from

16   repeating the misconduct it has committed here.  In considering this factor, the Court should examine:

17   "(1) the feasibility of less drastic sanctions and why alternative sanctions would be inadequate; (2)

18   whether alternative methods of sanctioning or curing the malfeasance were implemented before

19   ordering dismissal; and (3) whether the party has been warned of the possibility of dismissal before

20   actually ordering dismissal." *Am. Rena*, 2015 WL 12732433, at *30 (citations omitted).

21       With regard to the feasibility of less drastic sanctions, as in *American Rena*, 360Heros'

22   "premeditated scheme to strengthen its trademark claims and defenses based on false evidence and

23   other litigation misconduct undermines the integrity of the court." *Id.* at *31.  Accordingly, imposing

24   lesser sanctions "is untenable" since 360Heros' "misconduct was intentional, calculated, and in bad

25   faith." *Id.*; *see also Indiezone*, 2014 WL 4354122, at *4 (lesser sanctions inappropriate "due to the

26   egregious and fundamental nature of the fraud"); *IV Sols.*, 2009 WL 10314274 at *9.  Likewise, with

27   regard to availability of alternative methods of sanctioning, "[a] party may not grossly abuse the

28   judicial process and then expect to be allowed to litigate the merits of their case until they have

exhausted graduated sanctions." *Am. Rena*, 2015 WL 12732433, at *31; *IV Sols.*, 2009 WL 10314274, at *9 ("It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook, and the perjury committed to undergird it.").  Finally, as set forth above, there is no dispute that GoPro has amply warned 360Heros of its intention to seek terminating sanctions.  *See supra* Part III.F.

> **G.    In the Alternative, the Court Should Impose Evidentiary and Instructional Sanctions**

Should the Court decline to impose terminating sanctions, it should impose evidentiary and instructional sanctions against 360Heros.[14]

> **1.    Evidentiary Sanctions**

360Heros' falsified evidence, perjured testimony, and litigation misconduct has been directed toward proving its false claim of priority of use of its purported "Abyss" mark.  Even after GoPro provided notice to 360Heros of the falsified evidence, 360Heros could have produced evidence to rebut GoPro's position regarding the Forged Document, or hire its own forensics expert, but it did not.[15]  360Heros has no evidence of its claim of senior priority, except for the Forged Document or hearsay based on the Forged Document.  Taking all of 360Heros' misconduct described above into consideration, the Court should deem it conclusively established that GoPro's ABYSS mark has priority of use over "Abyss" as used by 360Heros, and should preclude 360Heros from arguing or introducing any evidence, before a jury or otherwise, that any "Abyss" mark was used prior to GoPro's ABYSS mark.  These remedies are directly tied to the willful misconduct at issue— 360Heros' fabrication of evidence of priority and obstruction of justice—and hence are more than justified.  *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992) (affirming evidentiary sanctions because party's misconduct "rendered unreliable virtually all of the evidence that a finder of fact could potentially consider").

---

[14] To the extent the Court decides to grant evidentiary and instructional sanctions, GoPro would promptly seek leave to file another summary judgment motion with regard to infringement of the ABYSS mark.

[15] Having chosen not to engage in any of these efforts and the gravity of its misconduct, 360Heros should not be allowed at this late stage to pursue any of these options.

2.      **Adverse Inference Jury Instruction**

In addition, the jury should be instructed that 360Heros willfully falsified and submitted forged documents, offered false testimony, and obstructed justice, and that the jury may consider and draw adverse inferences from these facts.  *See Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1151 (N.D. Cal. 2012) (granting adverse inference jury instruction for failure to preserve evidence); *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 566 (N.D. Cal. 2008) (same); *Keithley*, 2008 WL 3833384, at *17 (same).

**V.      CONCLUSION**

360Heros submitted the Forged Document in this litigation in an attempt to materially affect GoPro's trademark infringement claim.  As part of this fraudulent scheme, 360Heros falsified evidence in the Forged Document, offered perjured testimony █████████████, and engaged in litigation misconduct through its last minute attempt to claw back the document as privileged. Accordingly, the Court should grant GoPro's motion for terminating sanctions with respect to GoPro's claims for infringement of its ABYSS mark, as only terminating sanctions are an appropriate deterrent to 360Heros' fraudulent misconduct.  Alternatively, the Court should impose evidentiary and adverse inference sanctions against 360Heros' misconduct.

DATED:  February 16, 2018          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By   */s/ Mehrnaz Boroumand Smith*
          MEHRNAZ BOROUMAND SMITH

          Attorneys for Plaintiff
          GOPRO, INC

70518367V.3