# EXHIBIT 8

# EXPERT WITNESS REPORT

### GoPro, Inc. v. 360Heros, Inc.
### United States District Court for the Northern District of California
### Case No. 3:16-CV-01944-SI

**CONTAINS CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER**

Prepared by:

Derek M. Duarte, Esq.
BlackStone Discovery
2656 East Bayshore Road
Palo Alto, CA  94303

## INTRODUCTION AND QUALIFICATIONS

I am the President of BlackStone Discovery ("BlackStone") which is a global litigation support and investigative services firm headquartered in Palo Alto, CA. I manage the Digital Forensics, Data Operations, Development, Infrastructure, Security, and Client Solutions Divisions for all six BlackStone locations. BlackStone has been performing computer forensic investigations since 2013, and I have overseen the Digital Forensics group since 2014. Digital forensics is a branch of forensic science encompassing the recovery and investigation of material found in digital devices. BlackStone Discovery's Digital Forensics group is responsible for performing the defensible forensic collection and analysis of Electronically Stored Information for investigations and litigation support.

I have a Bachelor of Arts from the University of California, Berkeley, and a Juris Doctorate from the University of California, Hastings College of the Law. I am a licensed attorney in the State of California (SBN 262494) and an Oracle-certified computer programmer.

I have worked in electronic discovery and forensic investigations for over a decade. I speak globally on the preservation, collection, and use of data analytics in electronic discovery and investigations, with emphasis on the requirements of the Federal Rules of Civil Procedure and how they translate to technical implementation. I have overseen hundreds of litigation matters involving the analysis and production of electronic data. Of those matters, many involve real-time electronic communications using instant messaging software such as Skype. I have overseen the forensic analysis of at least fifty Skype databases in the course of digital forensics investigations. I have also overseen many investigations that required accessing, preserving, and exporting data remotely in different states and countries. Moreover, the analysis of electronic communications history, the validity of electronic data, and deletion activity have been core aspects of our Digital Forensics practice. My Curriculum Vitae is attached hereto as Exhibit A. Any publications I have authored, and events at which I have been a guest expert speaker are described in my Curriculum Vitae. A list of all cases in which I have previously testified at deposition can also be found within Exhibit A to my report.

Kilpatrick Townsend & Stockton LLP, counsel for GoPro, Inc. in the above matter, retained BlackStone to independently identify, analyze, and verify the scope of electronic communications exchanged using the Skype program between Alexandre Jenny and Michael Kintner from November 8, 2012 to February 17, 2015. At BlackStone, our common practice is for me to direct the overall investigation, identify analysis targets, and supervise the work of our forensic examiners and analysts. I then consolidate their findings into a final conclusion. All analysis contained in this report was performed by me, or by staff at BlackStone who worked under my supervision.

BlackStone is charging the rate of $295 per hour for my work in this case. The billing rate of others who assisted me at BlackStone is $295 per hour. This compensation does not depend in any way on the opinions I express or the outcome of this litigation. I provide this expert report pursuant to Federal Rule of Civil Procedure 26(b) to set forth the facts and opinions that I may offer at hearing and/or trial and the basis for those opinions.

## MATERIALS CONSIDERED

BlackStone was asked to identify, analyze, and verify Skype communications between Alexandre Jenny, who is a GoPro employee, and Michael Kintner, who I understand works for defendant 360Heros, Inc. I understand that Mr. Jenny is a French citizen who lives and works in France. I further understand that French privacy law imposes limitations on the export of certain types of information of its citizens from France, including electronic data such as Skype communications. I further understand that French privacy law requires informed consent from its citizens and that such consent was obtained from Mr. Jenny to access his computer and hard drives that contain the Skype communications. Mr. Jenny gave express permission allowing BlackStone to access the relevant Skype database files necessary to perform the analyses, including preserving, searching, and extracting the data. As explained later in this report, BlackStone accessed Mr. Jenny's Skype database files in France by remotely connecting to the subject computers in France. These methods to connect and access data from a remote location are routinely used in the computer forensics industry when regulations make the relocation of data untenable.

I understand that Mr. Jenny identified computer hard drives that he had in his possession that may contain his Skype communications with Mr. Kintner and gave express consent for BlackStone to access this information. Mr. Jenny had two separate locations containing his Skype communications: (1) archived files stored on an old computer that he no longer used since approximately the Summer of 2004, and (2) Skype files on his active computer that included more recent conversations between Mr. Jenny and Mr. Kintner from June 28, 2014 onward. BlackStone reviewed and analyzed at a top level the hard drives for those computers to find the relevant repository of these Skype communications, a SQL database file named "main.db," that contained the Skype communications between Mr. Jenny and Mr. Kintner.

After preserving, analyzing, and extracting information from the "main.db" repository, BlackStone also reviewed documents that GoPro produced in this litigation which were HTML exports of the Skype communications between Mr. Jenny and Mr. Kintner dated November 8, 2012 to March 20, 2014 and June 18, 2014 to February 17, 2015.

I understand that 360Heros did not produce any Skype communications between Mr. Jenny and Mr. Kintner in native format, *e.g.* computers or SQL database files. However, should

360Heros later locate and produce such files, I reserve the right to review such materials as part of my expert analysis.

The opinions I offer in this report are based upon materials and analyses that have been reviewed and completed by me or my staff to date, and are based on the information currently available to me. If additional information becomes available, I reserve the right to supplement this report based on the additional information received, including any additional information provided by 360Heros and/or its experts. I also reserve the right to prepare or have prepared demonstrative exhibits that would assist me in testifying before the Court or jury. I will prepare such exhibits or have them prepared from materials and do so in accordance with the pretrial order.

## EXECUTIVE SUMMARY

OPINION NO. 1: BlackStone identified the Skype chat repository, "main.db," which contained communications between the Skype account user names "ajenny-kolor" for Alexandre Jenny and "mkintner" for Michael Kintner between November 8, 2012 and March 20, 2014. Using standard computer forensics practices, BlackStone preserved the data and exported all of the communications between the "ajenny-kolor" and "mkintner" Skype accounts during this timeframe. The exported data is attached to this report as Exhibit B (XLS format) and Exhibit D (HTML format). Based on this data, there are no Skype communications on February 5, 2014 or March 20, 2014 between the "ajenny-kolor" and "mkintner" user names containing the word "abyss."

OPINION NO. 2: Analysis of the original filesystem metadata shows that the Skype chat repository, stored as "main.db" that included the February 5, 2014 and March 20, 2014 communications between Mr. Jenny and Mr. Kintner, had not been accessed or modified after May 23, 2014. This indicates that no Skype communications stored within this database file were added, edited, or deleted after May 23, 2014. I understand that this lawsuit did not start until 2016.

## BASIS FOR OPINIONS

BlackStone's collection of Mr. Jenny's Skype database files containing his communications with Mr. Kintner took place in two phases after receiving permission from Mr. Jenny to access and analyze the computers containing those files. The first phase was conducted on September 27, 2017, via WebEx remote desktop connection to a Windows computer, located at a GoPro office in Francin, France, with the hard disk from an old computer of Mr. Jenny attached to that computer as a logical volume. The hard disk had been removed from Mr. Jenny's old computer prior to BlackStone being engaged in this case and it was

3

connected in this fashion to allow for remote access to the enclosed Skype data on the hard drive without requiring the original source to be relocated outside of France. The connection of the hard disk in this fashion made the Skype data files available and reviewable through the graphical user interface of the Windows computer without modifying the data. This is a standard practice for BlackStone when performing investigations of this nature where personnel are not able to be on-site. The second phase was conducted on October 10, 2017, via WebEx remote desktop connection to Mr. Jenny's active computer which was also located in Francin, France. The WebEx remote desktop connection again allowed BlackStone to see the screen of and direct the computers in France.

During the first phase, BlackStone identified the Skype chat repository, stored as "main.db," associated with Mr. Jenny's Skype account and confirmed that it was the only Skype chat repository stored on the hard disk. When a person uses the Skype program, that person interacts with a graphical user interface on their computer screen. At the same time, the Skype software program stores in real-time the typed-in conversation into a database file. The Skype program's default name for the database file is "main.db" and that file is stored on the Skype user's computer. Thus, based on BlackStone's experience with and knowledge of the Skype software program, and by searching for the "main.db" file within the provided data sources, BlackStone knows that it analyzed the original database source of the Skype communications and its extracted results reflect the original communications from this source. BlackStone conducted a targeted forensic collection of the "main.db" file using Access Data FTK Imager, a standard forensic imaging tool, to preserve the original metadata. The resulting forensic image is independently verifiable by the verification hash value that was generated by the FTK Imager software upon its creation. This verification can be run via FTK Imager on any version of the forensic image, original or copy, to validate its integrity. BlackStone reviewed the original filesystem metadata of the "main.db" repository and identified that the database files and its contents in the repository had not been accessed or modified after May 23, 2014. This indicates that no Skype communications stored within the repository including the communications between Mr. Jenny and Mr. Kintner were added, edited, or deleted after May 23, 2014.

Due to performance issues with the remote desktop connection to the Windows computer in Francin that created delays in executing the search, analysis, and export, BlackStone caused to be transferred the forensic image of the "main.db" file via GoPro server from Francin to a computer in GoPro's office in a Paris suburb.[1] The same WebEx remote

---

[1] The data remained in France throughout this process. After BlackStone confirmed successful transfer to GoPro's Paris office, the additional file was deleted from GoPro's server.

4

desktop session was used to allow BlackStone to perform these steps; the screensharing was simply switched to the host computer in Paris by GoPro employee, Mikhael Jabroux, who was under the direction of BlackStone.  BlackStone controlled the data preservation, search, analysis, and extraction. BlackStone mounted the forensic image of the "main.db" file as a write-blocked logical volume on the host computer in Paris using FTK Imager and validated that the local copy had not been altered after being transferred from Francin to Paris.  The mounted copy of the preserved "main.db" file was then mounted to SQL DB Browser, an application that enables searching of database files such as .db files.  Using this software, BlackStone ran queries against the Skype "main.db" database files to identify all Skype communications between Alexandre Jenny and Michael Kintner between November 8, 2012 and March 20, 2014.  The resulting hits were exported to a CSV file format which was then converted to XLSX format for ease of review in Microsoft Excel.  A true and correct copy of this XLSX file is attached as Exhibit B.  The method that BlackStone used to analyze the Skype database file including the use of FTK Imager to preserve the file and the SQL DB Browser to analyze the contents of the file, is a standard method for analyzing Skype communications in the forensics industry and has been used by BlackStone in the past in analyzing Skype communications.

  After BlackStone had conducted the extraction described above, it received and reviewed a copy of an HTML export of the Skype communication between Mr. Jenny and Mr. Kintner that GoPro had produced in this litigation, which is attached as Exhibit C.  BlackStone compared its forensically extracted hits (see Exhibit B) with the information in the HTML export (see Exhibit C).  The two contained the same communications between Mr. Jenny and Mr. Kintner between November 8, 2012 and March 20, 2014, except that emoticons, pictures, or symbols are graphically represented in Exhibit C while Exhibit B shows code representing those emoticons, pictures, or symbols.

  Because the exported XLSX file may be difficult to read by a layperson, BlackStone was asked to and used Skyperious, a third-party Skype management tool, to export an HTML version of the identified communications for ease of review in a web browser.  A true and correct copy of this HTML file is attached as Exhibit D.  Comparison of the conversations in Exhibit D with the Skype conversations in the forensically extracted data in Exhibit B show that the two are the same, except that emoticons, pictures, or symbols are graphically represented in Exhibit D while Exhibit B shows code representing those emoticons, pictures, or symbols.

  Once more on September 27, 2017, BlackStone remotely connected to Mr. Jabroux's computer in Paris, France using WebEx remote desktop session to mount and review the "main.db" repository previously saved to this location.  In this session, BlackStone searched the same copy of the preserved "main.db" file to identify if there were any Skype communications

between Alexandre Jenny and Michael Kintner on February 5, 2014 containing the word "abyss." The communications between Mr. Jenny and Mr. Kintner on that date did not show any hits for the word "abyss." A targeted CSV report, showing the absence of such language for this date range, was exported from SQL DB Browser and converted to XLSX format. As shown below, the term "abyss" does not appear anywhere in the February 5, 2014 Skype communications between Mr. Jenny and Mr. Kintner:

| E | F | G |
|---|---|---|
| Date | Timestamp | body_xml |
| 2014-02-05 | 17:31:46 | hi Mike |
| 2014-02-05 | 17:32:25 | hello |
| 2014-02-05 | 17:33:00 | how r you today? |
| 2014-02-05 | 17:33:01 | do you have 5 minutes ? |
| 2014-02-05 | 17:33:04 | sure |
| 2014-02-05 | 17:33:06 | great. |
| 2014-02-05 | 17:33:21 | Did you have time to test AVP1.5 / APG 3.5 ? |
| 2014-02-05 | 17:33:35 | i sure do |
| 2014-02-05 | 17:33:40 | feedback ? |
| 2014-02-05 | 17:34:19 | i just installed everything this morning and am using it to try to create my 3D content. |
| 2014-02-05 | 17:34:27 | I am actually doing it right now as we speak |
| 2014-02-05 | 17:34:48 | I can provide feedback this afternoon if you like when I am finished |
| 2014-02-05 | 17:35:09 | sure. a quick email with some feedback is nice to have <ss type="smile">:)</ss> |
| 2014-02-05 | 17:35:21 | ok no problem |
| 2014-02-05 | 17:35:26 | thanks. |
| 2014-02-05 | 17:35:29 | <ss type="smile">:)</ss> |
| 2014-02-05 | 17:35:30 | Another question. |
| 2014-02-05 | 17:35:33 | sure |
| 2014-02-05 | 17:35:51 | do you have or know a matthew davis as customer ? |
| 2014-02-05 | 17:36:06 | ummm, not sure let me check |
| 2014-02-05 | 17:38:28 | I have a couple of Mathew&apos;s but no Davis |
| 2014-02-05 | 17:38:56 | ok cool. I need to check a bit around to see that. Thanks for confirmation |
| 2014-02-05 | 17:39:18 | nothing more from me. I let you work, I&apos;m going home <ss type="smile">:)</ss> |
| 2014-02-05 | 17:39:38 | ok have a great day! enjoy your evening    <ss type="smile">:)</ss> |

**CONFIDENTIAL**

A true and correct copy of this XLSX file regarding the February 5, 2014 conversation is attached as Exhibit E.  BlackStone also checked the Skype communications between Mr. Jenny and Mr. Kintner for any entries on March 20, 2014 that may include the term, "abyss," and that term does not appear anywhere in those communications as shown below:

| | | | | | | |
|---|---|---|---|---|---|---|
| 816 | Hello Alexandre | 6575 | 24915 | #ajenny-kolor/$m | mkintner | 2014-03-20 | 17:49:31 |
| 817 | Do you have a second? | 6575 | 24919 | #mkintner/$ajenn | mkintner | 2014-03-20 | 17:49:37 |
| 818 | hi Mike. Sure, but not for long ? | 6575 | 24920 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:49:57 |
| 819 | ok | 6575 | 24921 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:49:59 |
| 820 | `<partlist alt="">`<br>  `<part identity="ajenny-kolor">`<br>    `<name>alexandre jenny</name>`<br>    `<duration>24</duration>`<br>  `</part>`<br>  `<part identity="mkintner">`<br>    `<name>Michael Kintner</name>`<br>    `<duration>24</duration>`<br>  `</part>`<br>`</partlist>` | 6575 | 24927 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:50:12 |
| 821 | `<partlist alt="">`<br>  `<part identity="ajenny-kolor">`<br>    `<name>alexandre jenny</name>`<br>    `<duration>24</duration>`<br>  `</part>`<br>  `<part identity="mkintner">`<br>    `<name>Michael Kintner</name>`<br>    `<duration>24</duration>`<br>  `</part>`<br>`</partlist>` | 6575 | 24928 | #mkintner/$ajenn | ajenny-kolor | 2014-03-20 | 17:50:36 |

Upon completion of the targeted export and file conversion steps, all resulting CSV, XLSX, and HTML reports containing only the Skype communications between Mr. Jenny and Mr. Kintner were securely transferred to BlackStone and Kilpatrick Townsend via Citrix Sharefile, a secure digital transfer service that BlackStone regularly uses in its forensics work.  The forensic image of the "main.db" file was encrypted and saved to a USB thumb drive by BlackStone, to be stored in GoPro's safe in France.  BlackStone prepared the encryption via remote desktop session and the password for the archive is known only to BlackStone, to restrict access to BlackStone employees alone.

The second phase of BlackStone's investigation was conducted on October 10, 2017, via WebEx remote desktop connection to Mr. Jenny's active computer in Francin, France.  Mr. Jenny also consented to this remote session.  The purpose of the second phase was to identify more recent Skype communications between Mr. Kintner and Mr. Jenny based on BlackStone being informed that Mr. Jenny also had a newer backup of the Skype "main.db" file including such communications.  BlackStone identified the Skype chat repositories, again stored by the Skype program as "main.db", associated with Mr. Jenny's accounts within the targeted backup

**CONFIDENTIAL**

folders. This included, what was represented by Mr. Jenny as, a copy of the "main.db" file that was searched in the first phase of BlackStone's investigation as well as a second copy of the "main.db" file generated from a newer backup of the Skype communications. BlackStone archived the "main.db" files to ZIP format to preserve original metadata. Archiving files in this manner is a standard practice in the computer forensics industry.

In order to again work around the slow network connection and performance issues with the remote connection to Francin, France, BlackStone utilized the same method from the first phase to securely transfer the "main.db" files to Mr. Jabroux's computer in Paris. BlackStone then extracted copies of the preserved "main.db" files from the ZIP archive and mounted them to SQL DB Browser for search and export. BlackStone ran SQL queries which confirmed that the contents of the older backup of the Skype "main.db" file matched those preserved in the first phase. BlackStone then ran SQL queries against the more recent backup of the "main.db" file to identify all Skype communications between Alexandre Jenny and Michael Kintner between June 18, 2014 and February 17, 2015. The resulting hits were exported to a CSV file format which was then converted to XLSX format for ease of review in Microsoft Excel. A true and correct copy of this XLSX file is attached as Exhibit F.

After BlackStone had conducted the extraction described above, BlackStone also received an HTML export of the Skype communications between Mr. Jenny and Mr. Kintner that GoPro produced, attached as Exhibit G. BlackStone compared its forensically extracted hits (see Exhibit F) with the information in the HTML export (see Exhibit G). The two contained the same Skype communications between Mr. Jenny and Mr. Kintner between June 18, 2014 and February 17, 2015, except that emoticons, pictures, or symbols are graphically represented in Exhibit G while Exhibit F shows code representing those emoticons, pictures, or symbols.

Similar to what it had done in the first phase, BlackStone used the Skyperious program to export an HTML version of the identified communications for ease of review in a web browser. A true and correct copy of this HTML file is attached as Exhibit H. Comparison of the conversations in Exhibit H with the Skype conversations in the forensically extracted data in Exhibit F show that the two are the same, except that emoticons, pictures, or symbols are graphically represented in Exhibit H while Exhibit F shows code representing those emoticons, pictures, or symbols.

Upon completion of the targeted export and file conversion steps, all resulting CSV, XLSX, and HTML reports were securely transferred to BlackStone and Kilpatrick Townsend again via Citrix Sharefile. In order preserve the original metadata, BlackStone created another ZIP archive containing the "main.db" source files which were then encrypted and saved to a USB

thumb drive by BlackStone, to be stored in a safe in GoPro's Paris office by Mr. Jabroux. BlackStone prepared the encryption via remote desktop session and set a password for the encrypted archive that is known only to BlackStone.

## CONCLUSION

BlackStone searched for all Skype communications between Mr. Jenny and Mr. Kintner using computer forensics tools and queries on the hard drives provided by Mr. Jenny. BlackStone then analyzed these communications.  Based on the foregoing analysis, there is no record of the term "abyss" in Mr. Jenny's Skype communications with Mr. Kintner on February 5, 2014 or March 20, 2014.  Further, the original filesystem metadata shows that the Skype database file containing these communications in this time period was not added to, edited, or deleted after May 23, 2014.

DATED this 8th day of February, 2018.

Derek M. Duarte, President